CARLOS F. DEL TORO LUGO, demandante y recurrente, *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandado y recurrido; WALDEMAR LÓPEZ MATOS e IRASELA HERNÁNDEZ RIVERA, demandantes y recurrentes, *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandado y recurrido.

*Números:* RE-86-313 *Resueltos:* 12 de septiembre de 1994
 RE-86-326

*Luis E. Enríquez Marín*, abogado del recurrente Carlos F. Del Toro Lugo; *Eudaldo Báez Cruz*, abogado de los recurrentes Waldemar López Matos e Irasela Hernández Rivera; *Rafael Ortiz Carrión, Procurador General, Norma Cotti Cruz, Subprocuradora General*, y *Carmen A. Bravo de Riefkohl, Procuradora General Auxiliar*, abogados del Estado Libre Asociado de Puerto Rico.

El Juez Asociado Señor Alonso Alonso emitió la opinión del Tribunal.

¿Se sostiene la confiscación de un vehículo de motor de un tercero cuando por el delito que da base a la confiscación se desestiman los cargos al determinarse que no existe causa probable para acusar al imputado (pasajero del vehículo confiscado)? ¿Puede sostenerse la confiscación de un vehículo sólo mediante la presentación de evidencia que haya sido suprimida en el proceso criminal, por el delito que da base a la confiscación, por ser fruto de un registro o allanamiento ilegal? Estas son las interrogantes que plantean los casos del epígrafe, de los cuales ordenamos su consolidación por requerir nuestra expresión en cuanto a la naturaleza de la confiscación en esta jurisdicción y su relación con el procedimiento criminal. Veamos los hechos pertinentes.

I

A. *Hechos del Recurso RE-86-313*

Los hechos que dan base al primero de estos recursos, Caso Núm. RE-86-313, interpuesto por el recurrente Carlos F. Del Toro Lugo, surgen de un incidente acaecido el 26

de octubre de 1985. En esa fecha el hijo del recurrente conducía un vehículo que era propiedad de su padre y llevaba como pasajeros a otras dos (2) personas cuando fue detenido por la Policía al conducir contra el tránsito. La intervención del policía José Torres Bonilla culminó en la expedición de un boleto de tránsito contra el conductor (hijo del recurrente) y con el arresto del pasajero Martín Santana por alegada posesión de la sustancia controlada conocida como "marihuana". Procedió, así, la Policía a confiscar el vehículo de motor marca Honda, modelo de 1980 y tablilla Núm. 36-B-916.([1])

Conforme a las disposiciones de ley, el recurrente incoó una demanda para impugnar la confiscación. A su vez, continuaban los procedimientos en el caso criminal contra el pasajero Martín Santana. En dicho caso se celebró la vista preliminar correspondiente en la cual se determinó la no existencia de causa probable para acusar por el delito de infracción al Art. 404 de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2404. *Dicha determinación*

---

([1]) El Art. 512 de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2512, establece lo siguiente en su parte pertinente:

"*Sec. 2512. Confiscaciones*

"(a) Los siguientes bienes estarán sujetos a confiscación por el Estado Libre Asociado de Puerto Rico:

"(1) Toda sustancia controlada fabricada, distribuida, dispensada o adquirida, infringiendo las disposiciones de este Capítulo;

"(2) Toda materia prima, producto o equipo de cualquier clase que se use o se proyecte usar en la fabricación, confección de compuestos, elaboración, entrega, importación, o exportación de cualquier sustancia controlada, infringiendo las disposiciones de este Capítulo;

"(3) Toda propiedad que se use o esté destinada a usarse como envase de la propiedad descrita en los apartados (1) y (2) de este inciso;

"(4) *Todo medio de transporte, incluyendo naves aéreas, vehículos, bestias o embarcaciones, que se usen o se destinen para transportar o facilitar en alguna forma la transportación, venta, recibo, posesión o encubrimiento de la propiedad descrita en los apartados (1) y (2) de este inciso*;

"(5) Todos los libros, récords y estudios o investigaciones, incluyendo fórmulas, microfilms, cintas registradoras e información que se use o se proyecte usar, infringiendo este Capítulo.

"(b) *Cualquier propiedad sujeta a confiscación de acuerdo con el apartado (4) del inciso (a) de esta sección será incautada siguiendo el procedimiento establecido por la Ley núm. 39, de 4 de junio de 1960, según enmendada, conocida como Ley Uniforme de Confiscación de Vehículos, Bestias y Embarcaciones, secs. 1721 y 1722 del Título 34.*" (Énfasis suplido.)

*advino final y firme sin que el Estado solicitara una vista en alzada.*

Así las cosas, el 8 de mayo de 1986 se celebró la vista en el pleito de confiscación. Los demandantes presentaron el testimonio de Carlos Del Toro Lugo y de su hijo Carlos Del Toro Ortiz. Se sometió una copia certificada de la resolución del Caso V.P. 85-1519 de la cual surge la determinación de no causa contra Martín Santana Ramírez. Por su parte, el Estado presentó *la misma prueba utilizada en la vista preliminar* contra Santana Ramírez, a saber, el testimonio del agente Torres Bonilla y un memorando del agente Guzmán Cancel que certificaban la sustancia incautada como marihuana. No surge de los autos —ni alega el recurrente— objeción alguna a la introducción de la prueba presentada por el Estado. El tribunal, ante la prueba presentada por las partes, dictaminó que procedía la confiscación realizada por el Estado.

De dicha sentencia, los demandantes solicitaron revisión ante nos y alegaron error en la apreciación de la prueba por parte del tribunal de instancia; además, alegaron básicamente que "si [la] prueba presentada no sirvió para la determinación de causa en la vista preliminar contra Santana Ramírez que viajaba como pasajero en el vehículo del demandante menos podía servir para ser utilizada en [el caso de confiscación]". Caso Núm. RE-86-313, Revisión, pág. 4.

## B. *Hechos del Recurso RE-86-326*

Por otra parte, el otro recurso ante nuestra consideración, Caso Núm. RE-86-326, fue instado por el recurrente Waldemar López Matos y se fundamenta en los hechos siguientes. El 23 de julio de 1985 se expidió una orden de allanamiento contra la residencia y los vehículos del recurrente para buscar material relacionado con el juego ilegal de la bolita. Durante el allanamiento se ocupó material relacionado al juego de la bolita en la residencia del recu-

rrente y un *black jack* dentro de uno de los vehículos, razón por la cual dicho vehículo fue confiscado.([2])

Oportunamente, el recurrente y su esposa instaron acción de impugnación a la confiscación del vehículo marca Toyota, modelo de 1981 y tablilla Núm. 57-J-536.

Durante la vista en su fondo, los demandantes ofrecieron una copia de la orden de allanamiento que dio base a la ocupación del vehículo confiscado y una copia del informe de arresto hecho por el agente que diligenció dicha orden, las cuales se admitieron como evidencia sin oposición. Además presentó, aunque el tribunal no la admitió (por lo cual quedó como prueba ofrecida ni admitida en evidencia), la minuta de la vista en el caso *Pueblo v. Waldemar López Matos. De tales documentos se desprende que no sólo el acusado resultó absuelto de la causa criminal, sino que dicha absolución tuvo como base la supresión de la única evidencia delictiva ocupada al imputado,* ante la ausencia de motivos fundados que justificaran la expedición de la orden de allanamiento. Tal hecho ha sido aceptado por los recurridos.([3])

El Estado, por su parte, alegó que no existía controversia alguna en cuanto a la transportación del arma en el

---

([2]) La Ley de Armas de Puerto Rico, en su Art. 37 (25 L.P.R.A. sec. 447), dispone:
*"Sec. 447. Transportación de armas prohibidas; confiscación*

"El Secretario de Justicia confiscará cualquier vehículo, bestia o embarcación marítima o aérea en que se cargue, descargue, transporte, lleve o traslade; que se use para cargar, descargar, transportar, llevar o trasladar; o que se sorprenda cargado, o en el momento de cargar, o descargar, o de estar transportando, llevando o trasladando, cualquier arma en violación de este Capítulo.

"Para la confiscación y disposición de vehículos, bestias y embarcaciones marítimas o aéreas se seguirá el procedimiento establecido por ley conocida como 'Ley Uniforme de Confiscación de Vehículos, Bestias y Embarcaciones'."

([3]) El recurrente señala como error del tribunal a quo el no haber aceptado como evidencia la minuta de la vista en el caso criminal arriba señalada, de la cual surge que el Tribunal Superior suprimió la evidencia delictiva en poder del Estado. *En su comparecencia, el Hon. Procurador General acepta que el error fue cometido y nos señala que "de la Minuta de la vista celebrada el ... 2 de mayo de 1986 en el caso por infracción a la Ley de Bolita (Páginas 10 y 11 del Apéndice de la Petición) se desprende claramente que no s[ó]lo el acusado fue absuelto, sino que además, la Moción de Supresión de Evidencia presentada por éste fue declarada con lugar".* (Énfasis suplido.) Caso Núm. RE-86-326, Alegato de los recurridos, pág. 9.

vehículo y que la absolución no había sido producto de una determinación en los méritos del caso.

Sometido el caso por las partes, el tribunal declaró sin lugar la impugnación de la confiscación en vista de que el sobreseimiento de los cargos criminales no fue el producto de una determinación del caso en sus méritos. De dicha sentencia acudió en revisión el recurrente, y alega básicamente que "err[ó] el Honorable Tribunal de Instancia al declarar sin lugar la Demanda de Confiscación, luego de habérsele demostrado fehacientemente que el registro y allanamiento que produjo el alegado black-jack en el vehículo confiscado era uno ilegal, y/o que no se violó estatuto legal alguno con el referido vehículo confiscado; habiendo sido resuelto así por medio de un dictamen judicial válido, final, firme e inapelado". (Énfasis suprimido.) Caso Núm. RE-86-326, Petición, pág. 5.([4]) Veamos.

## II

En nuestra jurisdicción la confiscación es el acto de ocupación, y de investirse para sí, que realiza el Ejecutivo por

---

([4]) El recurrente planteó, además, los tres (3) errores siguientes:

"1. Cometió error el Honorable Tribunal de Instancia al concluir siendo la prueba clara a esos efectos de que el automóvil objeto de la acción de confiscación no era propiedad del aquí demandante-recurrente, y en adición el que la Moción de Supresión de Evidencia presentada por éste mismo en la acción criminal que se siguió en su contra había sido declarada Sin Lugar por el Tribunal Superior, cuando ello era todo lo contrario.

"3. Cometió error el Honorable Tribunal de Instancia al no aceptar en evidencia la prueba ofrecida y no admitida, ya que al así hacerlo privó al apelante de aportar prueba *relevante, pertinente* y que sostenía de manera contundente las alegaciones de su Demanda.

"4. Cometió error el Honorable Tribunal de Instancia al declarar sin lugar la Demanda de Impugnación de Confiscación, pues con ello tuvo el efecto de privar a los demandantes de su propiedad sin un debido proceso de ley sin una justa compensación; toda vez que los mecanismos que se utilizaron para ocupar el referido vehículo habían resultado para la fecha del 6 de junio de 1986, cuando se dictó la Sentencia en el caso de autos, unos ilegales." (Énfasis en el original.) Caso Núm. RE-86-326, Petición, pág. 5.

Los recurridos aceptan que los errores enumerados como 1 y 3 fueron cometidos por el tribunal. Respecto al error número 4 puede apreciarse que se trata básicamente de la misma cuestión planteada en el error que pasaremos a discutir.

mandato de la Asamblea Legislativa de todo derecho de propiedad sobre cualesquiera bienes, derechos, privilegios, intereses, reclamaciones, valores, dinero en efectivo, vehículos y cualquier otro medio de transportación, utensilios, artefactos, máquinas, equipo, instrumentos y cualquier otro objeto análogo que haya sido utilizado en relación con la comisión de delitos tipificados en el Código Penal de Puerto Rico, en las leyes de sustancias controladas, de armas ilegales y explosivos, en las de juegos prohibidos, leyes fiscales, leyes de vehículos y tránsito, de embarcaciones y leyes contra el crimen organizado, entre otras. Ley Uniforme de Confiscaciones de 1988, Ley Núm. 93 de 13 de julio de 1988 (34 L.P.R.A. sec. 1723 *et seq.*).([5])

En el ámbito federal y local se ha estatuido la facultad del Estado de apropiarse de bienes relacionados con la actividad delictiva, tanto como parte de los procedimientos penales que se llevan contra el propietario de éstos, como por medio de una acción civil contra la cosa u objeto mismo. La primera se conoce como *confiscación criminal*, y aunque sus orígenes se remontan al viejo derecho común anglosajón, su introducción en la legislación criminal federal es de cuño reciente.([6]) Se trata de una acción *in personam* contra un imputado en un caso criminal en el cual se impone la confiscación como *una pena adicional* contra éste si resulta convicto. La confiscación criminal forma

([5]) La Ley Núm. 14 de 10 de junio de 1993 (34 L.P.R.A. sec. 1723) enmendó el Art. 2 de la Ley Uniforme de Confiscaciones de 1988 para establecer una presunción relacionada con la incautación de dinero en efectivo e instrumentos negociables. En específico, la enmienda señala lo siguiente:

"Se presume que el dinero en efectivo e instrumentos negociables que se encuentren en el lugar o lugares (*premises*) donde ocurre la incautación son el producto de la actividad ilegal, o han sido utilizados o se han intentado utilizar para llevar a cabo el acto que da lugar a la confiscación." 34 L.P.R.A. sec. 1723.

([6]) El Congreso federal legisló esta pena inicialmente al aprobar la ley conocida como *Racketeer Influenced and Corrupt Organizations Statute (RICO Act)*, 18 U.S.C. sec. 1961 *et seq.* Posteriormente, entre otras, se incluyó como parte de las sanciones estatuidas en el *Continuing Criminal Enterprise* Statute, 21 U.S.C. sec. 848. Véanse: 4 U.S. Code Cong. & Adm. News, págs. 3374–3380 (1984); *United States v. Parcel of Rumson, N.J., Land*, 507 U.S. 111 (1993). En Puerto Rico se ha incorporado la pena de confiscación como parte de las disposiciones de la Ley contra el Crimen Organizado, 25 L.P.R.A. sec. 971d.

parte integral del procedimiento criminal contra el propietario de la cosa a ser incautada, y la convicción de éste es, precisamente, el fundamento que origina la confiscación. Su naturaleza es de tipo punitivo y va dirigida principalmente a promover el interés del Estado en cuanto a que el criminal no se lucre de su actividad delictiva. Véanse: 98th Cong., 2d Sess., 4 U.S. Code Cong. & Adm. News, págs. 3374–3401 (1984); *United States v. Turkette*, 452 U.S. 576, 585 (1981). Véase, además, D.J. Fried, *Rationalizing Criminal Forfeiture*, 79 J. Crim. L. & Criminology 328, 357–360 (1988). En este sentido, la confiscación criminal no se limita a los instrumentos del delito, objeto de las confiscaciones civiles, sino que además se extiende a las ganancias y a los frutos en general de la actividad delictiva. Véanse: *United States v. Parcel of Rumson, N.J., Land*, 507 U.S. 111 (1993); *United States v. Ginsburg*, 773 F.2d 798 (7mo Cir. 1985); *United States v. Navarro-Ordas*, 770 F.2d 959 (1985).

En la jurisdicción federal la *confiscación civil* se trata de una acción *in rem*, contra la cosa, en la cual se le imputa *su utilización en la comisión de un delito*. Se trata de una ficción jurídica mediante la cual —en cierta medida— se culpa a la propia cosa por su participación en el delito. *United States v. U.S. Coin & Currency*, 401 U.S. 715 (1971). Como señalara el Tribunal Supremo de EE.UU.: "It is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate and insentient." *Various Items v. United States*, 282 U.S. 577, 581 (1931). Puesto que la acción estatal se dirige contra la cosa en sí misma, en general, *la culpabilidad o inocencia del propietario es irrelevante* en cuanto a la procedencia o no de la confiscación civil. *Goldmith-Grant Co. v. United States*, 254 U.S. 505 (1921); *Calero-Toledo v. Pearson Yatch Leasing Co.*, 416 U.S. 663 (1974); *United States v. One Assortment of 89 Firearms*, 465 U.S. 354 (1984); *General Motors*

*Acceptance v. Brañuela*, 61 D.P.R. 725 (1943); *Meléndez v. Tribunal Superior*, 90 D.P.R. 656, 677 (1964); *E.L.A. v. Tribunal Superior*, 94 D.P.R. 717, 721 (1967); *Ochoteco v. Tribunal Superior*, 88 D.P.R. 517 (1963); *Carlo v. Srio. de Justicia*, 107 D.P.R. 356 (1978). El derecho del Estado de tomar posesión de la cosa surge del mal uso que se le haya dado a ésta. *United States v. Parcel of Rumson, N.J., Land*, supra.

Los elementos pertinentes a la determinación de si procede una confiscación civil son: si existe prueba suficiente y preponderante de que se haya cometido un delito, y que exista un nexo entre la comisión del delito y la propiedad confiscada. *General Motors Acceptance v. Brañuela*, supra; Fried, *supra*, pág. 382. La confiscación civil constituye una *acción independiente del resultado de la acción penal* que por el mismo delito el Estado pueda incoar contra un sospechoso en particular, de haber alguno.

En relación con la confiscación *in rem* o civil, el Tribunal Supremo de Estados Unidos, en *Austin v. United States*, 509 U.S. 602, 621–622 (1993), resolvió lo siguiente:

> "... [A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather *can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.*" ... In light of the historical understanding of forfeiture as punishment, the clear focus of ss 881(a)(4) and (a)(7) on the culpability of the owner, and the evidence that Congress understood those provisions as serving to deter and to punish, *we cannot conclude that forfeiture under ss 881(a)(4) and (a)(7) serves solely a remedial purpose. ... We therefore conclude that forefeiture under these provisions constitutes "payment to a sovereign as punishment for some offense",* ... and, as such, is subject to the limitations of the Eighth Amendment's Excessive Fines Clause. (Énfasis en el original suprimido y énfasis suplido.)

En la opinión citada, el Tribunal Supremo de Estados Unidos reconoce el carácter mixto de la confiscación civil, que por un lado sirve un objetivo remedial en beneficio del Estado, *United States v. One Assortment of 89 Firearms*,

supra, pág. 365,([7]) junto con el fin social preventivo en cuanto a la futura utilización de la propiedad con fines delictivos y, a su vez, enfatiza el objetivo de ésta a servir como castigo o pena al propietario del bien que ha sido objeto de la confiscación.([8])

A pesar de que en *Austin v. U.S.*, supra, se reconoce que una confiscación del objeto de contrabando puede interpretarse como una acción de naturaleza remedial, en la medida en que se remueva de la sociedad un objeto peligroso o ilegal (citando a *United States v. One Assortment of 89 Firearms*, supra), se plantea la dificultad de tipificar ciertos objetos (como un automóvil y los bienes inmuebles) como "instrumentos de contrabando" que justifican la acción remedial.([9])

Recientemente, el Tribunal Supremo de Estados Unidos resolvió que se requiere la celebración de una vista previa a una confiscación *de propiedad inmueble. U.S. v. James*

---

([7]) En *United States v. One Assortment of 89 Firearms*, 465 U.S. 354 (1984), el Tribunal Supremo federal resolvió que por considerarse la confiscación de las armas según 18 U.S.C. sec. 924(d) *una sanción civil de naturaleza remedial y no un procedimiento criminal ni una pena adicional por la comisión de un delito*, a ésta no le aplica la doctrina de doble exposición ni de impedimento colateral por sentencia. Por ello, aunque el imputado fue absuelto de los cargos criminales al levantar la defensa de entrampamiento, esto no impidió que el Estado siguiera un procedimiento de confiscación de las armas. En apoyo a su posición, el Tribunal distinguió la naturaleza civil (*in rem*) de la confiscación y *el "quantum" de prueba en cada acción*. El Tribunal rechazó expresamente sus pronunciamientos previos en sentido contrario, según expresados un siglo atrás en *Coffey v. United States*, 116 U.S. 436 (1886). *Cf. Murphy v. United States*, 272 U.S. 630, 631–632 (1926); *Helvering v. Mitchell*, 303 U.S. 391, 397–398 (1938); *One Lot Emerald Cut Stones v. United States*, 409 U.S. 232 (1972).

([8]) Refiérase, además, a *Alexander v. United States*, 509 U.S. 544 (1993), en el cual el Tribunal Supremo federal remitió para la consideración del Tribunal de Apelaciones (Octavo Circuito) si las confiscaciones, según 18 U.S.C. sec. 1963(a) —*RICO ACT*— violaban la Octava Enmienda de la Constitución federal, L.P.R.A., Tomo 1, que impide la imposición de multas excesivas.

([9]) En *Austin v. United States*, 509 U.S. 602 (1993), el Tribunal Supremo de Estados Unidos explica que ha reservado expresamente la interrogante de si la ficción del procedimiento *in rem* puede utilizarse para confiscar la propiedad o un bien de una persona inocente. Íd., pág. 502, citando a *Goldsmith-Grant Co. v. United States*, 254 U.S. 505, 512 (1921), *Calero-Toledo v. Pearson Yatch Leasing Co.*, 416 U.S. 663 (1974), dicho Foro anticipó que la confiscación de la propiedad de una persona realmente inocente (*truly innocent owner*) levantaría serias interrogantes constitucionales. En el caso *Austin v. United States*, supra, pág. 617 esc. 10, no fue necesario considerar esta interrogante.

*Daniel Good Real Property et al.*, 62 L.W. 4013 (1993). En este caso, al momento de la confiscación, de acuerdo con la ley federal, 21 U.S.C. sec. 881(a)(7),([10]) el propietario había sido convicto por un delito bajo la ley de sustancias controladas del estado de Hawaii. El Tribunal expresó lo siguiente:

> ... based upon the importance of the private interests at risk and the absence of countervailing Government needs, we hold that the seizure *of real property* under [21 U.S.C.] s. 881(a)(7) is not one of those extraordinary instances that justify the postponement of notice and hearing. Unless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture.
>
> To establish exigent circumstances, the Government must show that less restrictive measures —i.e., a lis pendens, restraining order, or bond— would not suffice to protect the Government's interests in preventing the sale, destruction, or continued unlawful use of the real property. (Escolio omitido y énfasis suplido.) *U.S. v. James Daniel Good Real Property*, supra, pág. 4018.

A pesar de que en *U.S. v. James Daniel Good Real Property*, supra —por tratarse de una confiscación de propiedad inmueble— no aplica al caso que nos ocupa, la opinión refleja la tendencia de interpretar restrictivamente las leyes de confiscación. En dicha opinión el Tribunal tomó en consideración la importancia histórica y la vigencia actual del interés privado que representa el derecho del propietario a mantener control sobre la propiedad y a estar libre de

---

([10]) El texto de 21 U.S.C. sec. 881(a)(7) dispone lo siguiente:

"(a) *Subject property*

"The following shall be subject to forfeiture to the United States and no property right shall exist in them:

"(7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner."

la interferencia gubernamental. Allí se expresó que una incautación *ex parte* crea un riesgo de error inaceptable. El Tribunal distingue que aunque los estatutos de confiscación constituyen un poderoso instrumento para poner en vigor la legislación de sustancias controladas, la intención del Congreso no fue privar a los propietarios inocentes de su propiedad.[11]

## III

En Puerto Rico, el procedimiento de confiscaciones contenido en la Ley Uniforme de Confiscación de Vehículos, Bestias y Embarcaciones, Ley Núm. 39 de 4 de julio de 1960 (34 L.P.R.A. ants. secs. 1721 y 1722), sustituida por la Ley Uniforme de Confiscaciones de 1988 es de carácter civil o *in rem*. Véanse: *Calero-Toledo v. Pearson Yatch Leasing Co.*, supra; *E.L.A. v. Tribunal Superior*, supra; *U.S. v. One Assortment of 89 Firearms*, supra; *Metro Taxicabs v. Tesorero*, 73 D.P.R. 171 (1952); *Ochoteco v. Tribunal Superior*, supra; *General Motors Acceptance v. Brañuela*, supra; *Torres v. Buscaglia, Tes.*, 68 D.P.R. 336 (1948); *Martínez v. Buscaglia, Tes.*, 69 D.P.R. 438 (1948); *Gral. Motors Acceptance v. Tribl. de Distrito*, 70 D.P.R. 941 (1950); *Stuckert Motor Co. v. Tribl. de Distrito*, 74 D.P.R. 527 (1953); *Estado Libre Asociado v. Tribl. Superior*, 76 D.P.R. 842 (1954). Véase, además, la Exposición de Motivos de la citada Ley Núm. 93 (1988 Leyes de Puerto Rico 409).

Por otro lado, independientemente de la naturaleza

---

[11] Conforme se explicó en *Austin v. United States*, supra, la ficción de que el objeto se considera el ofensor primordial y no su propietario descansa en la noción de que aquel propietario *que ha permitido que su propiedad se vea involucrada en un acto delictivo ha actuado negligentemente.* En dicha opinión se explica lo siguiente:

"In the criminal context we have permitted punishment in the absence of conscious wrongdoing, *so long as the defendant was not 'powerless' to prevent or correct the violation.* United States v. Park, 421 U.S. 658, 673 (1975) (corporate officer strictly liable under the Food, Drug, and Cosmetic Act). There is nothing inconsistent, therefore, in viewing forfeiture as punishment even through the forefeiture is occasioned by the acts of a person other than the owner." (Énfasis suplido.) *Austin v. United States*, supra, pág. 503 esc. 11.

civil de la acción, la forma como ha sido aplicada la sanción, el procedimiento que se utiliza y las defensas permitidas en éste, refleja su propósito punitivo. La confiscación de los bienes se considera un *elemento disuasivo* para que una persona, por temor a exponerse al peligro de perder su propiedad, limite su actividad delictiva o se dificulte su realización. Véase la Exposición de Motivos de la Ley Núm. 14 de 10 de junio de 1993, Leyes de Puerto Rico, pág. 44.

El procedimiento de confiscación va dirigido contra la cosa (*in rem*), y no contra el dueño, de modo que si éste, *consciente y voluntariamente*, la ha puesto en posesión del infractor o de la persona bajo la cual éste actúa, los derechos del dueño corren la suerte del uso a que el poseedor pueda someter el vehículo. *Estado Libre Asociado v. Tribl. Superior*, supra; *Metro Taxicabs v. Tesorero*, supra; *General Motors Acceptance v. Brañuela*, supra. Esta norma general ha cedido en aquellas situaciones que el propietario no ha puesto el vehículo en posesión del infractor de manera voluntaria (*Estado Libre Asociado v. Tribl. Superior*, supra, pág. 721) o cuando se han tomado medidas cautelares expresas para precaver el uso ilegal de la propiedad en la comisión de un delito. *Ochoteco v. Tribunal Superior*, supra. Cf. *Calero-Toledo v. Pearson Yatch Leasing Co.*, supra; *Carlo v. Srio. de Justicia*, supra, pág. 361.

La jurisprudencia de Puerto Rico ha seguido una "ruta de cautelosa atenuación de severidad" al aplicar el principio de confiscación *de la propiedad del inocente*, conforme indicamos en *Carlo v. Srio. de Justicia*, 107 D.P.R. 356 (1978), y recientemente reiteramos en *Alvenre Corp. v. Srio. de Justicia*, 130 D.P.R. 760 (1992), opinión de conformidad emitida por el Juez Asociado Señor Fuster Berlingeri, a la cual se unieron el Juez Presidente Señor Andréu García y el Juez Asociado Señor Alonso Alonso. En *Carlo v. Srio. de Justicia*, supra, pág. 362, también explicamos que "[c]*ada caso debe verse y pesarse a la luz de sus hechos ... [N]o toda entrega de la posesión de un vehículo tiene igua-*

*les motivaciones, ni idéntica justificación, ni la misma necesidad ni similares propósitos".* (Énfasis suplido.) Al no ser favorecidas por las cortes las confiscaciones, y al interpretarse restrictivamente los estatutos que las autorizan, hemos sostenido que tal interpretación debe resultar "consistente con la justicia y los dictados de la razón natural". (Énfasis suprimido.) *Pueblo v. González Cortés*, 95 D.P.R. 164, 168 (1967). Véase *Carlo v. Srio. de Justicia*, supra, citado en *Alvenre Corp. v. Srio. de Justicia*, supra, pág. 766.

■ En resumen, en *Alvenre Corp. v. Srio. de Justicia*, supra, consideramos los siguientes criterios al evaluar los contornos de la defensa de tercero inocente en casos de confiscación: validez del propósito que persigue la confiscación, la razón natural y nuestro sentido de justicia.

Desde *Carlo v. Srio. de Justicia*, supra, anticipamos el riesgo que podría representar este poderoso instrumento del Estado en una situación del dueño inocente de un bien confiscado. Veamos.

## IV

■ En nuestra jurisdicción "[l]a absolución en los méritos adjudica con finalidad irreversible el hecho central, tanto del caso criminal como el de confiscación, de que el vehículo no se utilizó para transportar mercancía ilícita. ... La doctrina de impedimiento colateral por sentencia exige la desestimación del segundo proceso, aun cuando tenga por objeto un delito distinto, si al resolverse el caso anterior se adjudicaron y determinaron hechos necesariamente decisivos para el segundo. *Pueblo v. Lugo*, 64 D.P.R. 554, 559–560 (1945). *Pueblo v. Ortiz Marrero*, 106 D.P.R. 140 (1977)". *Carlo v. Srio. de Justicia*, supra, pág. 363. En el caso anterior (*Carlo v. Srio. de Justicia*, supra, págs. 364–365), resolvimos que la absolución en los méritos de un acusado, "dueño del vehículo confiscado[,] inevitable-

mente comprende la adjudicación de la cuestión central de que no utilizó el vehículo para transportar material prohibido". Al así resolver, explicamos que "la sentencia absolutoria en juicio tiene un valor y trascendencia que amparan no sólo la libertad, sino también el derecho de propiedad del absuelto, y que el automóvil no es por su naturaleza instrumento de crimen y sí un bien mueble destinado al aprovechamiento por su dueño en actividades lícitas". *Carlo v. Srio. de Justicia*, supra, pág. 365. Anticipamos también en *Carlo v. Srio. de Justicia*, supra, pág. 364, que resolver lo contrario sería colocar al acusado en riesgo de ser castigado dos (2) veces por el mismo delito, violentando el Art. II, Sec. 11 de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1; además de que vulneraría los preceptos constitucionales que excluyen la privación de propiedad, sin un debido proceso, o su toma sin mediar una justa compensación. Art. II, Secs. 7 y 9, Const. E.L.A., *supra*.

■ En *Carlo v. Srio. de Justicia*, supra, pág. 365, explicamos que "[e]l diseño legislativo prevaleciente en Puerto Rico dentro del cual se complementan las disposiciones confiscatorias de leyes especiales con el procedimiento ordenado en la Ley Uniforme de Confiscación (34 L.P.R.A. sec. 1721 y ss.) *mantiene una distancia y una separación de campos entre la conducta del poseedor de la propiedad utilizada en la empresa criminal y el interés del dueño inocente, y una concentración en la cosa o instrumento del crimen en sí como objetivo abstracto del decomiso*, indispensables para proteger la seguridad y bienestar del pueblo contra el crimen y el fraude". (Énfasis suplido.) Allí nos circunscribimos estrictamente a la situación o los hechos ante nuestra consideración; es decir, un *acusado —dueño del vehículo confiscado— que fue absuelto en los méritos*. Reconocimos y reiteramos la excepción que constituye el interés particular de un dueño inocente en

contraposición al legítimo interés del orden público en materia de confiscaciones.

Delineada la naturaleza y los propósitos que orientan nuestra Ley Uniforme de Confiscaciones de 1988, nos corresponde ahora evaluar si una determinación de no causa para acusar a un imputado, la cual advino final y firme, constituye cosa juzgada en su modalidad de impedimento colateral por sentencia en el pleito de impugnación de la confiscación.

## V

En una vista preliminar, la prueba ofrecida por el Estado se orienta a demostrar que existe causa probable para creer que se cometió un delito y que el imputado fue su autor. *Pueblo v. López Camacho*, 98 D.P.R. 700, 702 (1970); *Vázquez Rosado v. Tribunal Superior*, 100 D.P.R. 592 (1972); *Pueblo v. Rivera Alicea*, 125 D.P.R. 37 (1989).

■ El propósito de la vista preliminar es

> ... determinar si es necesario celebrar un juicio plenario contra el imputado, con las gravosas consecuencias que ello conlleva tanto para éste como para el Estado. En su dinámica interna funciona a base de probabilidades, esto es, si es probable que se haya cometido el delito y si probablemente fue cometido por el imputado. Regla 23(c) de Procedimiento Criminal, 34 L.P.R.A. Ap. II. De ahí que no exista una determinación final de inocencia o culpabilidad en esta etapa. Tal determinación se hace en el juicio propiamente. *Pueblo v. Rivera Alicea*, supra, pág. 41, citando a *Pueblo v. Rodríguez Aponte*, 116 D.P.R. 653, 660 (1985), y a *Pueblo v. González Pagán*, 120 D.P.R. 684 (1988).

■ Igual análisis aplica a nuestro estatuto de confiscaciones. La *norma general* vigente en esta jurisdicción está dirigida a los efectos de que sólo constituirán un impedimento a la acción de confiscación aquellas determinaciones judiciales en un juicio plenario que inevitable-

mente adjudiquen, en sus méritos, los hechos esenciales de la acción confiscatoria. *Carlo v. Srio. de Justicia*, supra, págs. 364–365. Excepto en casos extraordinarios, *como norma general* la absolución o desestimación de los cargos contra un imputado particular en el procedimiento criminal no constituye impedimento contra el ejercicio de la acción civil de confiscación. Los casos ante nos justifican el reconocimcento de otra excepción a esta norma general para evitar incongruencias entre el ordenamiento criminal y el civil que no se justifican.

La determinación de que existe causa probable constituye una autorización judicial para encauzar. Véanse: *Pueblo v. González Malavé*, 116 D.P.R. 578, 583 (1985), y *Pueblo v. Quiñones, Rivera*, 133 D.P.R. 332 (1993), entre otros. De otra parte, "cuando en la vista preliminar se determina que no existe causa probable para acusar por delito alguno, el imputado quedará exonerado [del delito imputado en la denuncia original]. Regla 23(c) de Procedimiento Criminal, 34 L.P.R.A. Ap. II. En ese caso, el tribunal perderá su jurisdicción sobre el imputado para procesarlo por delito alguno. Para que el tribunal adquiera o retenga autoridad o jurisdicción tendrá que citarle nuevamente para la celebración de la vista en alzada". *Pueblo v. Quiñones, Rivera*, supra, págs. 336–337, citando a *Pueblo v. Félix Avilés*, 128 D.P.R. 468, 476 (1991).

La vista preliminar, en términos del *quantum* de la prueba, require una mera *scintilla* o un mínimo de evidencia para apoyar la determinación prima facie acerca de que se cometió un delito y que con toda probabilidad fue el imputado quien lo cometió. Véanse: *Pueblo v. Rivero, Lugo y Almodóvar*, 121 D.P.R. 454, 475 (1988); *Pueblo v. Rodríguez Aponte*, 116 D.P.R. 653 (1985); *Pueblo v. López Camacho*, supra, entre otros.

En *Pueblo v. Félix Avilés*, supra, pág. 476, explicamos que la exoneración producto de una determinación

de no causa, en vista preliminar, no tiene un carácter final, · puesto que no se trata de una adjudicación en los méritos. Dicha exoneración "no impide que el Estado pueda continuar el proceso contra el imputado [dado que] existen procedimientos subsiguientes que son parte integral de la acción penal seguida contra el imputado. Uno de esos procedimientos lo es la vista preliminar en alzada". Véase *Pueblo v. Rivera Colón*, 119 D.P.R. 315 (1987).

Conforme a nuestro ordenamiento procesal penal, para que el tribunal adquiera jurisdicción sobre el imputado en la vista preliminar en alzada, es un requisito indispensable del debido proceso de ley que éste sea citado previa y adecuadamente. Véanse: *Pueblo v. González Rivera*, 132 D.P.R. 517 (1993); *Pueblo v. Félix Avilés*, supra; *Pueblo v. Méndez Pérez*, 120 D.P.R. 137 (1987); *Pueblo v. Rivera Colón*, supra; *Pueblo v. Vélez Castro*, 105 D.P.R. 246 (1976); *Pueblo v. Opio Opio*, 104 D.P.R. 165, 170 (1975).

█ Sin embargo, cuando se determina la inexistencia de causa en la vista preliminar y el Ministerio Público no solicita la celebración de una vista preliminar en alzada luego de transcurrir el término de sesenta (60) días, como norma general *esa determinación que exonera al imputado adviene final y firme.*([12]) El tribunal carece entonces de jurisdicción sobre dicho imputado. *Pueblo v. Felix Avilés*, supra; *Pueblo v. Quiñones, Rivera*, supra.

*El efecto de lo antes indicado es que la determinación de no causa final y firme de un imputado constituye una determinación judicial que deja a éste libre, independientemente de si es una determinación en los méritos o no lo es.*

En resumen, al considerar la naturaleza de la vista preliminar y sus objetivos, debemos concluir que cuando no

---

([12]) Para aquellas situaciones de excepción a esta norma general, refiérase a *Pueblo v. González Rivera*, 132 D.P.R. 517 (1993); *Pueblo v. Rivera Arroyo*, 120 D.P.R. 114, 120 (1987); *Pueblo v. Rivera Colón*, 119 D.P.R. 315, 325 (1987); *Pueblo v. Cordero Rodríguez*, 110 D.P.R. 638, 639 (1981); *Pueblo v. Reyes Herrans*, 105 D.P.R. 658, 660 (1977).

exista ni una *scintilla* de evidencia para la determinación de causa probable en la vista preliminar —en aquellas situaciones en que esa determinación judicial *advenga final y firme*— tampoco podría sostenerse la confiscación de un vehículo relacionada con el delito imputado. El propósito punitivo, que también persigue la confiscación, nos impide resolver lo contrario. *El fundamento sobre el cual descansa la confiscación ha desaparecido al ser exonerado el imputado del delito que precisamente justificó la incautación del automóvil por parte del Estado.*

Además, para propósitos de una confiscación, la determinación de no causa de la vista preliminar, *en específico, ante las circunstancias como las del caso que nos ocupa, en que el dueño del vehículo es un tercero,* tiene el mismo efecto que la absolución en los méritos de un acusado, dueño del vehículo, conforme fue resuelto en *Carlo v. Srio. de Justicia,* supra. Sin duda, el sostener la confiscación del automóvil, en circunstancias como las de este caso, constituiría una pena aplicada al dueño inocente. *El automóvil no es en sí mismo un objeto peligroso* cuya confiscación cumpla el objetivo remedial que el Tribunal Supremo de Estados Unidos reconoció en *United States v. One Assortment of 89 Firearms,* supra.

En consecuencia, resolvemos que una sentencia final y firme de un tribunal respecto a una determinación de no causa en vista preliminar constituye cosa juzgada en su modalidad de impedimento colateral por sentencia en el pleito de impugnación de confiscación.(13)

---

(13) En *Rodríguez Rodríguez v. Colberg Comas,* 131 D.P.R. 212, 220–221 (1992), señalamos que "[e]l requisito de identidad de partes en la cosa juzgada y en su modalidad de impedimento colateral, el cual reafirmamos en *A & P Gen. Contractors v. Asoc. Caná,* supra, *sigue la regla de mutualidad,* que prohíbe la alegación de cosa juzgada 'contra una parte ... a menos que esta fuera parte original *o se hallare en relación mutua (privity) con otra ...*'". (Énfasis suplido.) En este caso reiteramos que "el impedimento debe ser mutuo", citando a *Andreu v. P.R. Ry., L. & P.,* 33 D.P.R. 617, 618 (1942). Íd.

En nuestra jurisdicción se adscriben a la propiedad confiscada las consecuencias derivadas del delito que justificó la incautación por parte del Estado. Desde esa

■ Además, en los casos que el imputado no sea el dueño de la propiedad confiscada, éste tendrá a su alcance probar que no ha puesto la propiedad en posesión del supuesto infractor de manera voluntaria o que tomó las medidas cautelares expresas para prevenir el uso ilegal de la propiedad en la comisión de un delito, o de que es un tercero inocente, si es necesario.

En el caso del recurrente Carlos F. Del Toro Lugo, éste alega que la determinación de no causa se debió a que el juez no creyó el testimonio del agente en cuanto a la razonabilidad del registro realizado. El recurrente impugnó la confiscación mediante la presentación de una copia certificada de la resolución de no causa dictada por el tribunal en la causa criminal por el delito relacionado a la confiscación y de prueba testifical.

En este caso el dueño del vehículo se lo prestó a su hijo, quien transportó al pasajero al cual no se le determinó causa probable por el delito imputado. El dueño del vehículo, *además, nada tenía que ver con el pasajero ni con la marihuana que éste alegadamente poseía.* Ante estas circunstancias, donde además al hijo del dueño del vehículo —quien lo conducía— no se le imputó delito alguno, *no* podía concluir razonablemente el tribunal que dicho vehículo estaba siendo utilizado para transportar, cargar o

perspectiva independientemente del titular o propietario de un bien confiscado, dicho objeto responde por el delito que justificó su incautación de igual modo que la persona imputada de delito, a menos que sea un tercero inocente. Existe, pues, entre el sujeto activo (que alegadamente comete un delito), sea éste procesado o no criminalmente y el sujeto pasivo (titular o propietario del bien confiscado), una *relación mutua* creada en virtud del estatuto que autoriza al Estado confiscar bienes y objetos.

Esta relación, en casos como el de marras, es suficiente para permitir en el pleito de impugnación el impedimento colateral por sentencia. Destacamos que el *hecho central* sobre el cual emana la autoridad del Estado para sostener la confiscación de un vehículo ya fue adjudicado. *De lo que se trata precisamente es de la relación entre la propiedad confiscada (el vehículo) y el alegado delito.* En virtud del propio estatuto de confiscaciones y la cautelosa atenuación de severidad que se hace en estos casos, debemos reconocer la existencia de identidad de partes entre los sujetos (activo y pasivo) afectados por la ficción jurídica establecida en la ley de confiscaciones. Para estos fines, en situaciones como ésta, el dueño o propietario del bien confiscado se coloca en la misma situación que el sujeto que alegadamente cometió el delito que autorizó al Estado a confiscar la propiedad.

trasladar drogas o para facilitar la comisión del delito imputado. El Estado no logró probar la existencia de causa probable para acusar por el delito imputado al pasajero. El pasajero no obtuvo el consentimiento del dueño del vehículo para utilizarlo para transportar drogas. *Concluimos, entonces, que el Sr. Carlos F. Del Toro Lugo era, además, un tercero inocente contra el cual no puede sostenerse la confiscación.*

Revocamos la sentencia del tribunal de instancia que denegó la impugnación de la confiscación en este caso.

## VI

Réstanos examinar la controversia en cuanto a si se puede sostener la confiscación civil mediante la presentación de evidencia previamente suprimida en el procedimiento criminal relacionado, por ser ésta producto de un allanamiento ilegal.

El Tribunal Supremo federal se enfrentó a esta interrogante en el caso de *Plymouth Sedan v. Pennsylvania*, 380 U.S. 693 (1965). En dicho caso se señaló que sería una anomalía permitir la utilización de evidencia obtenida de forma ilegal en el pleito de confiscación para probar la comisión del delito cuando esta misma evidencia tuvo que ser suprimida y no pudo ser utilizada para probar el delito en la acción penal por imperativo constitucional. *Plymouth Sedan v. Pennsylvania*, supra, pág. 701. Al respecto se resolvió que bajo la Décimocuarta Enmienda de la Constitución federal, L.P.R.A., Tomo 1, es obligatorio para los estados aplicar la regla de exclusión de evidencia sentada en el caso *Mapp v. Ohio*, 367 U.S. 643 (1961), en los procesos de confiscación respecto a la evidencia obtenida en violación a la Cuarta Enmienda de la Constitución federal, *supra*. *Plymouth Sedan v. Pennsylvania*, supra, pág. 702. Véase, también, W.R. LaFave, *Search and Seizure: A Treatise on the*

*Fourth Amendment*, 2da ed., Minnesota, Ed. West Publishing Co., 1987, Vol. 1, Sec. 1.7(a).

 A igual conclusión llegamos al analizar la situación de acuerdo con los preceptos de la Constitución del Estado Libre Asociado de Puerto Rico. El Art. II, Sec. 10 de nuestra Constitución, *supra*, específicamente declara que la evidencia obtenida en violación a ésta no será admisible en los tribunales. La exclusión de la evidencia ilegalmente obtenida se origina en consideraciones de política pública fundamentales al ordenamiento democrático establecido por la Constitución. La exclusión de esta evidencia nada tiene que ver con su valor probatorio, confiabilidad ni con la búsqueda de la verdad pues, por definición, una regla de exclusión de evidencia tiene el efecto de eliminar la evidencia pertinente a una controversia o a la credibilidad de un testigo. *Toll y Sucn. Rivera Rojas v. Adorno Medina*, 130 D.P.R. 352 (1992). Su fundamento se encuentra, como hemos señalado, en consideraciones de orden público, básicas a nuestro sistema democrático. Al respecto señalamos en *Toll y Sucn. Rivera Rojas v. Adorno Medina*, supra, págs. 358–359:

> ... [P]odemos decir que la regla de exclusión encarna tres (3) propósitos ínsitos en el Art. II, Sec. 10 de la Constitución del Estado Libre Asociado, *supra*. Primero, disuadir y desalentar a los funcionarios del orden público de que violen la protección constitucional (*deterrence*). Se reconoce que este elemento disuasivo realmente es el más fundamental. Segundo, integridad judicial. Los tribunales no deben ser cómplices de actos de desobediencia a la Constitución y admitir evidencia ilegalmente obtenida. Y tercero, impedir que el Gobierno se beneficie de sus propios actos ilícitos; de otra manera la ciudadanía perdería confianza en el Gobierno.

 A tales efectos, la aplicación de la regla de exclusión no se limita a causas criminales, sino que se extiende a acciones administrativas y civiles en que se cumplen sus propósitos de política pública *o en que el Gobierno sea*

*parte.* Véanse: *Pagán Hernández v. U.P.R.*, 107 D.P.R. 720 (1978); *E.L.A. v. Coca Cola Bott. Co.*, 115 D.P.R. 197 (1984); *Toll y Sucn. Rivera Rojas v. Adorno Medina*, supra; La-Fave, *op. cit.*, págs. 144–145.

Es más que evidente que la regla de exclusión del Art. II, Sec. 10 de nuestra Constitución, *supra*, aplica a los pleitos de confiscación. Se trata de un pleito en el cual se impugna la incautación, sin compensación alguna, de una propiedad *por parte del Estado* a base de la obtención ilegal de evidencia por parte *de los propios agentes del Estado* en violación de los derechos constitucionales de los ciudadanos. El resolver lo contrario constituiría una invitación al Estado a violentar las garantías constitucionales de los ciudadanos, puesto que independientemente de que se obtenga una convicción penal, *se estaría imponiendo una sanción económica civil en beneficio del Estado, en ocasiones mayor a la pena establecida a manera de multa por el delito en particular.* Claramente estaríamos permitiendo que el Estado se beneficie de sus propios actos ilícitos. Véanse: 1 *LaFave and Israel, Criminal Procedure* Sec. 3.1(b), pág. 135 (1984); D. Nevares-Muñiz, *Sumario de derecho procesal penal puertorriqueño*, 3ra ed. rev., Hato Rey, Ed. Inst. Desarrollo del Derecho, 1989, pág. 61.

En conformidad con lo antes señalado, resolvemos que la determinación *final y firme* respecto a la exclusión o supresión de una evidencia ilegalmente obtenida, hecha en el procedimiento penal por el delito que da base a la confiscación, constituirá cosa juzgada en su modalidad de impedimento colateral por sentencia, en cuanto a la admisión de dicha evidencia en la acción de impugnación de confiscación, siempre que dicha determinación judicial sea debidamente planteada e introducida en evidencia. En cuanto al recurso instado por el recurrente Waldemar López Matos, *surge la aceptación por parte del Estado sobre la existencia de una determinación judicial final y firme que de-*

*clare la irrazonabilidad del registro y allanamiento, y conceda la exclusión de la evidencia delictiva.*

Por las razones expuestas en esta opinión, *se revoca la sentencia del tribunal de instancia en este caso por cuanto la confiscación exclusivamente descansó en evidencia que por imperativo constitucional debió ser suprimida.*

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Negrón García emitió una opinión concurrente y disidente. El Juez Asociado Señor Rebollo López emitió una opinión concurrente.

## — O —

Opinión concurrente emitida por el Juez Asociado Señor Rebollo López.

No obstante estimar que el resultado a que, *en ambos casos*, se llega en la opinión mayoritaria es correcto, *por lo "justo"*, una lectura serena de la misma produce *serias preocupaciones* en nuestro ánimo respecto *a la juridicidad de varios de los fundamentos que se aducen en apoyo de dicho resultado*; situación que nos obliga a meramente *concurrir* con el resultado en ambos casos.

### I

En el *primero* de ellos —*el Caso Núm. CE-86-326*— el tribunal de instancia *absolvió* a Waldemar López Matos, conforme surge de la propia opinión mayoritaria, *"en los méritos"* en las causas criminales que se llevaron en su contra por motivo del arma (*black jack*) que fue encontrada en el vehículo de motor que le fuera confiscado. El hecho de que dicha "absolución en los méritos" tuviera como base la supresión de la evidencia delictiva *no* tiene mayor

importancia. Lo crítico, *y determinante*, lo es que dicha persona fue absuelta "en los méritos".

La absolución "en los méritos" en la causa criminal hace *completamente aplicable* al referido caso civil de impugnación de confiscación la doctrina, o norma, que este Tribunal estableciera en *Carlo v. Srio. de Justicia*, 107 D.P.R. 356, 363 (1978), en el cual resolvimos que:

> La absolución *en los méritos* adjudica con finalidad irrevisable el hecho central, *tanto del caso criminal como el de confiscación*, de que el vehículo *no* se utilizó para transportar mercancía ilícita. Daría lugar a una anomalía resolver bajo estas circunstancias que no habiéndose probado en el primer caso que el acusado utilizara el vehículo para transportar material relacionado con el juego, hubiese de enfrentarse todavía a la misma cuestión en la demanda de impugnación. *One Plymouth Sedan*, supra, pág. 701. *La doctrina de impedimento colateral por sentencia exige la desestimación del segundo proceso*, aun cuando tenga por objeto un delito distinto, si al resolverse el caso anterior se adjudicaron y determinaron hechos necesariamente decisivos para el segundo. *Pueblo v. Lugo*, 64 D.P.R. 554, 559–560 (1945). *Pueblo v. Ortiz Marrero*, 106 D.P.R. 140 (1977). (Énfasis suplido.)

En resumen, López Matos *fue absuelto "en los méritos"*. Él era el *dueño* del vehículo confiscado. *Las partes*, tanto en el caso criminal como en el civil, *eran las mismas*; esto es, López Matos y el Estado. *Procede, por ende, aplicar al caso civil la doctrina de cosa juzgada en su modalidad de impedimento colateral por sentencia conforme lo resuelto en Carlo v. Srio. de Justicia*, ante. Ello, *dispone del recurso*. Procede, en consecuencia, dictar sentencia declarando *con lugar* la demanda, sobre impugnación de confiscación, que éste radicara contra el Estado. Resulta innecesario, *e impertinente*, toda referencia al asunto de la supresión de evidencia;[1] ello es un asunto que la mayoría "trae por los cabellos".

---

[1] En cuanto a las "consecuencias" de la acción de un tribunal de suprimir una evidencia en un caso criminal, véase nuestra opinión disidente en *Toll y Sucn. Rivera Rojas v. Adorno Medina*, 130 D.P.R. 352 (1992).

## II

En cuanto al Caso Núm. CE-86-313 —el de Carlos F. Del Toro Lugo— *no* hay duda que el resultado —*repetimos*— es simpático, *por lo justo y lógico que el mismo resulta ser.* Esto es, si procede declarar con lugar una demanda de impugnación de confiscación, conforme resolvimos en el antes citado caso de *Carlo,* por el hecho de que la persona *dueña* del vehículo confiscado haya sido absuelta en los méritos de los cargos criminales que se le imputaran, *con mayor razón debe tener éxito la impugnación de confiscación en la situación en que la causa criminal contra el dueño del vehículo confiscado es desestimada a nivel de vista preliminar, por no contar el Estado ni con una "scintilla" de evidencia en contra del acusado, y dueño del vehículo, y dicha determinación adviene final y firme.*

Dicho de otra forma, una absolución en los méritos implica, en la mayoría de los casos, que el juzgador de los hechos —juez o Jurado— entendió, en su "infinita sabiduría", que el Estado —*no obstante contar con "prueba suficiente" para someter el acusado a juicio*— *no* probó su caso "más allá de duda razonable". La determinación de *inexistencia* de causa probable para acusar, por otro lado, *significa que el Estado ni siquiera contaba con una "scintilla" de evidencia contra el acusado*; situación que justifica, *aún más,* declarar *con* lugar la impugnación de la confiscación realizada.

En resumen, suscribimos la norma de que una determinación, final y firme, de *inexistencia* de causa probable en el caso criminal que "sirvió de base" para la confiscación del vehículo *debe tener la misma consecuencia y efecto,* en el caso civil de impugnación de confiscación, que una absolución en los méritos; ello *siempre que* sea aplicable a la situación la doctrina de cosa juzgada en su modalidad de impedimento colateral por sentencia.

## III

*¿Por qué, entonces, nuestra inconformidad con lo expuesto por el Tribunal?* Llana y sencillamente debido al hecho de que la mayoría *no* sólo ignora los *hechos específicos* del caso ante nuestra consideración *sino que* aduce *fundamentos erróneos* en derecho en apoyo del resultado a que llega en el mismo.

Conforme surge de la propia opinión mayoritaria, en la vista *en su fondo* del caso civil de impugnación:

> Los demandantes presentaron el testimonio de Carlos Del Toro Lugo [*dueño del vehículo confiscado*] y de su hijo Carlos Del Toro Ortiz [*conductor del carro al momento de la intervención policiaca*]. Se sometió una copia certificada de la resolución del Caso V.P. 85-1519 *de la cual surge la determinación de no causa contra Martín Santana Ramírez* [persona en la posesión de la cual se encontró la droga narcótica y a base de la cual se confiscó el carro perteneciente a Del Toro Lugo]. *Por su parte*, el Estado presentó *la misma prueba utilizada en la vista preliminar contra Santana Ramírez*, a saber, el testimonio del agente Torres Bonilla y un memorando del agente Guzmán Cancel que certificaban la sustancia incautada como marihuana. No surge de los autos —*ni alega el recurrente— objeción alguna a la introducción de la prueba presentada por el Estado*. El tribunal, ante la prueba presentada por las partes, *dictaminó que procedía la confiscación realizada por el Estado.* (Énfasis suplido y en el original.) Opinión mayoritaria, pág. 979.

Si esa fue la situación que ocurrió a nivel de instancia, "resalta a la vista y hiere la retina" —*In re Roldán González*, 113 D.P.R. 238, 242 (1982)— que, *desde un punto de vista estrictamente técnico*, la decisión emitida por el foro de instancia, declarando sin lugar la demanda de impugnación, es correcta en derecho. Ello, *por dos (2) razones.* En primer lugar, no debemos olvidar que la norma imperante en nuestra jurisdicción es a los efectos de que —*en palabras de la opinión mayoritaria*— "el procedimiento de confiscaciones ... es de carácter civil o *in rem*". Opinión mayoritaria, pág. 987. En segundo término, *y según surge de la propia opinión mayoritaria*, el Estado presentó ante el tri-

bunal de instancia prueba sobre la posesión de una droga narcótica por el ocupante del vehículo que fue acusado criminalmente y, por ende, sobre la transportación en dicho vehículo de la evidencia delictiva; evidencia que fue *admitida sin objeción* de la parte demandante. Siendo esa la situación, *el tribunal de instancia tenía autoridad en ley para considerar dicha prueba al emitir su dictamen y declarar, si es que creyó la misma, sin lugar la impugnación de la confiscación realizada.*

Ante esta situación, y aparentemente no sabiendo que hacer, la mayoría recurre a la doctrina de cosa juzgada en la modalidad del impedimento colateral por sentencia. Razona, *erróneamente como veremos,* que habiendo también sido presentada en evidencia a nivel de instancia una "copia certificada de la resolución del Caso V.P. 85-1519 de la cual surge la determinación de no causa contra Martín Santana Ramírez" (opinión mayoritaria, pág. 979), le es aplicable al caso civil la antes mencionada doctrina de cosa juzgada por impedimento colateral por sentencia; doctrina que, como expresáramos anteriormente, este Tribunal aplicó en el caso de *Carlo v. Srio. de Justicia,* ante.

El "problema" con dicho razonamiento es que la referida doctrina *únicamente* puede ser aplicada *cuando hay identidad de partes entre los dos (2) pleitos o procedimientos.* Véase *A & P Gen. Contractors v. Asoc. Caná,* 110 D.P.R. 753, 762 (1981). En dicho caso expresamos, en síntesis y en lo pertinente, que dicha doctrina es aplicable o

> ...surte efectos cuando *un hecho esencial* para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final. Como resultado, *tal determinación es concluyente en un segundo pleito entre las mismas partes,* aunque estén envueltas causas de acción distintas .... (Énfasis suplido y en el original.) *A & P Gen. Contractors v. Asoc. Caná,* ante, pág. 762.

Es por ello que en la citada decisión de *Carlo v. Srio. de Justicia,* ante, y en el primer caso que hoy ocupa nuestra atención —el de Waldemar López Matos— resulta proce-

dente la aplicación de la referida doctrina de cosa juzgada en la modalidad de impedimento colateral por sentencia. En *ambas* de dichas situaciones *las partes eran las mismas tanto en el pleito civil como en el pleito criminal*. Ello así por cuanto el acusado en el proceso criminal era el dueño del vehículo, quien a su vez era el demandante en el pleito de impugnación de confiscación; siendo la otra parte, en ambos procedimientos, el Estado.

En el presente caso —el de Del Toro Lugo— *esa no es la situación*. Esto es, *no hay identidad de partes entre el pleito criminal y el civil*. Ello así, ya que el acusado en el pleito criminal *lo fue Martín Santana Ramírez* y en el pleito civil el demandante, dueño del vehículo confiscado, *lo es Del Toro Lugo*. Repetimos, *no* puede ser aplicada en el presente caso la doctrina de cosa juzgada en su modalidad de impedimento colateral por sentencia.

## IV

¿Significa lo anteriormente expresado que este Tribunal —*no obstante lo lógico y razonable que resulta ser la posición de que no debe proceder la confiscación de un vehículo de motor cuando el caso criminal que dio lugar a la misma es desestimado a nivel de vista preliminar*— viene en la "obligación" de confirmar la sentencia que declaró sin lugar la demanda de impugnación que en el presente caso radicara Carlos Del Toro Lugo? *Contestamos en la negativa*. Veamos por qué.

Si bien es cierto que al presente caso, *debido a sus hechos particulares*, no le puede ser aplicada la doctrina de cosa juzgada por impedimento colateral por sentencia, *ello no significa que este Tribunal no pueda evitar lo que a todas luces constituye una injusticia o "un fracaso de la justicia"*. Sabido es, que no somos dados a intervenir, con frecuencia, con las determinaciones de hecho que hace un tribunal de instancia y a sustituir nuestro criterio por el

del juzgador ante quien declararon los testigos y quien tuvo la oportunidad de verlos declarar y apreciar su comportamiento (*demeanor*) mientras lo hacían. Pero, el "arbritrio del juzgador de hechos es respetable, mas no es absoluto. Una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal". *Vda. de Morales v. De Jesús Toro*, 107 D.P.R. 826, 829 (1978).

Un examen sereno e imparcial de la prueba que desfilara en el presente caso ante el tribunal de instancia nos convence de que la determinación de dicho foro, a los efectos de que en el vehículo propiedad del demandante Del Toro Lugo se transportó la droga narcótica conocida como marihuana, el día 26 de octubre de 1985, *no* representa el balance más racional, justiciero y jurídico de la totalidad de la evidencia que desfilara ante dicho foro judicial y, por lo tanto, la misma no debe prevalecer. *Sanabria v. Sucn. González*, 82 D.P.R. 885 (1961); *Maryland Casualty Co. v. Quick Const. Corp.*, 90 D.P.R. 329 (1964); *Abudo Servera v. A.T.P.R.*, 105 D.P.R. 728 (1977); *Ramos Acosta v. Caparra Dairy, Inc.*, 113 D.P.R. 357 (1982); *Vélez v. Srio. de Justicia*, 115 D.P.R. 533 (1984); *Rivera Pérez v. Cruz Corchado*, 119 D.P.R. 8 (1987).

En adición, *no* podemos obviar el hecho de que un juez —en la causa criminal que se siguió contra Martín Santana y que fue la que "sirvió de base" a la confiscación del vehículo— *rechazó ese mismo testimonio que, posteriormente, el juez de instancia avaló*. Ello, no hay duda, resulta ser procesalmente permisible; no deja de ser dicha situación, sin embargo, una *anomalía jurídica* que causa preocupación.

Por otro lado, la actuación del Estado a través de todo este procedimiento ha sido una que, no obstante ser permisible desde un punto de vista estrictamente técnico, *ciertamente no puede ser catalogada como ejemplarizante*. Por un lado, el Estado *consintió y aceptó*, al no revisarla, la

determinación de inexistencia de causa probable en el caso criminal y, por el otro lado, a renglón seguido intenta prevalecer en el caso civil presentado exactamente *la misma prueba*, que fue rechazada en el caso criminal.

Si bien es cierto que hemos resuelto que no es de aplicación al Estado el precepto de que nadie puede ir contra sus propios actos, *Infante v. Tribl. Examinador Médicos*, 84 D.P.R. 308 (1961), la actuación del Estado en el presente caso está, cuando menos, *reñida con el principio de la buena fe que debe permear la litigación en nuestra jurisdicción.* Véase *Romero Arroyo v. E.L.A.*, 127 D.P.R. 724 (1991).

En vista de todo lo antes expresado —y no obstante *no* ser totalmente aplicable a los hechos del presente caso lo resuelto por este Tribunal en *Carlo v. Srio. de Justicia*, ante, por no haber identidad de partes— somos del criterio que procede decretar, como se dispone en la opinión mayoritaria, la *revocación* de la sentencia emitida por el foro de instancia que declaró sin lugar la demanda de impugnación que radicara el demandante Del Toro Lugo en el presente caso.

Por las razones antes expresadas es que *meramente concurrimos* con la opinión mayoritaria que emite el Tribunal en el presente recurso.

— O —

Opinión concurrente y disidente del Juez Asociado Señor Negrón García.

Concurrimos con el dictamen en el Caso Núm. RE-86-326 de *López Matos y Hernández Rivera v. E.L.A.* En su comparecencia, el Procurador General acepta que el tribunal sentenciador cometió dos (2) errores y que el Estado no puede sostener la confiscación usando *sólo* evidencia previamente suprimida en un procedimiento penal, por ser

producto de un allanamiento ilegal. "[L]a cláusula constitucional contra registros, allanamientos e incautaciones, así como la regla de exclusión de evidencia ilegalmente obtenida, opera principalmente contra el Estado. Esa protección no se limita a casos criminales: aplica a todo pleito judicial en que el Gobierno sea parte." (Énfasis suprimido.) *Toll y Sucn. Rivera Rojas v. Adorno Medina*, 130 D.P.R. 352, 361 (1992).

Disentimos, sin embargo, en el caso *Del Toro Lugo v. E.L.A.*, Caso Núm. RE-86-313. La decisión mayoritaria se afianza en una interpretación errónea de nuestra doctrina jurisprudencial y, además, incurre en un ejercicio teórico que no toma en cuenta los hechos verdaderamente pertinentes.

Como resultado, desarticula y erosiona todo el esquema jurídico operacional de nuestra ley de confiscaciones y otorga un escudo protector a aquellos violadores y usuarios de sustancias controladas que recurren a la estrategia de emplear vehículos ajenos. Elaboremos.

I

El 26 de octubre de 1985, Carlos Del Toro Ortiz, *hijo*, conducía el vehículo marca Honda con el consentimiento de su dueño, su padre Carlos F. Del Toro Lugo, contrario al tránsito de la calle McKinley, en Mayagüez. El policía José E. Torres Bonilla intervino, lo alcanzó y detuvo. Al acercarse, "percibió un fuerte olor" a marihuana y observó sobre el asiento trasero una bolsa transparente que contenía picadura con características de marihuana; acto seguido, arrestó a los tres (3) ocupantes y ocupó dicha bolsa. El análisis practicado por el agente Guzmán Cancel Acosta arrojó positivo a *marihuana*. El pasajero Martín Santana Ramírez aceptó que la marihuana le pertenecía; el otro pasajero y Del Toro Ortiz negaron que les perteneciera. El vehículo fue confiscado.

Subsiguientemente, Carlos Del Toro Lugo, padre, impugnó la confiscación. En la vista presentó su propio testimonio así como una copia certificada de la determinación final y firme de "no causa" en la vista preliminar contra Santana Ramírez. El Estado presentó el testimonio del policía Torres Bonilla y el resultado positivo de la prueba de campo efectuada por el agente Cancel Acosta. El Tribunal Superior, Sala de Mayagüez (Hon. Manuel A. Acevedo Hernández, Juez) declaró *sin lugar* la demanda. A solicitud de Del Toro Lugo, revisamos.

Hoy la mayoría revoca, fundada en *Carlo v. Srio. de Justicia*, 107 D.P.R. 356 (1978). Al hacerlo, extiende indebida e injustamente su *stare decisis*; lo único que dicho caso sostuvo fue que la *absolución en los méritos* de un *acusado* constituye un impedimento colateral para un posterior pleito civil de confiscación *contra esa misma persona*. Al respecto, allí señalamos:

¿Resulta "consistente con la *justicia* y los dictados de la razón natural" que la persona *absuelta en juicio* quede todavía expuesta al castigo que implica la pérdida de su propiedad?

La *absolución en los méritos* adjudica con finalidad irrevisable el hecho central, tanto del caso criminal como el de confiscación, de que el vehículo no se utilizó para transportar mercancía ilícita. Daría lugar a una anomalía resolver bajo estas circunstancias que *no habiéndose probado* en el primer caso que el acusado utilizara el vehículo para transportar material relacionado con el juego, hubiese de enfrentarse todavía a la misma cuestión en la demanda de impugnación. *One Plymouth Sedan*, supra, pág. 701. La doctrina de impedimento colateral por sentencia exige la desestimación del segundo proceso, aun cuando tenga por objeto un delito distinto, si al resolverse el caso anterior se *adjudicaron y determinaron* hechos necesariamente decisivos para el segundo. *Pueblo v. Lugo*, 64 D.P.R. 554, 559–560 (1945). *Pueblo v. Ortiz Marrero*, 106 D.P.R. 140 (1977). No podrá disminuirse el valor y consecuencia de la sentencia absolutoria recaída sobre el hecho medular de ambos procedimientos —que el acusado no transportó objetos prohibidos en su automóvil— por lo que la confiscación debe anularse, toda vez que no puede ponérsele en riesgo de ser castigado dos veces por el mismo delito (Const., Art. II, Sec. 11), y la subsistencia de la confiscación vulneraría los preceptos constitucionales que ex-

cluyen la privación de propiedad sin debido proceso (Art. II, Sec. 7); o su toma sin mediar justa compensación (Art. II, Sec. 9).

En términos de vindicación de derechos del acusado y su restitución al pleno disfrute de su libertad personal, nada supera la absolución decretada en juicio en los méritos, *producto de la depuración de hechos por el juzgador.* (Énfasis suplido.) *Carlo v. Srio. de Justicia,* supra, págs. 363–364.

La decisión mayoritaria tiene el grave defecto de *anular automáticamente toda* confiscación en que no se haya determinado causa probable por *cualesquiera fundamentos,* incluso desestimaciones por demoras u otros tecnicismos ajenos a los méritos; peor aún en situaciones en que el acusado es un *tercero. Ello atenta contra el principio elemental de separación de la acción criminal y la civil en confiscación.*[1]

La premisa cardinal de *Carlo v. Srio. de Justicia,* supra —la absolución de un acusado en un juicio *en sus méritos* conlleva anular la confiscación en *su contra*— no se materializa en el caso de autos; repetimos, aquí no hubo una "absolución en los méritos". Aunque estuvieran presentes los criterios que conforman una absolución en los méritos, ello no impediría la confiscación de acuerdo con la doctrina de *Carlo v. Srio. de Justicia,* supra, pues no estaban presentes las coordenadas fácticas en las cuales se apuntala la doctrina de "impedimento colateral por sentencia". Esta doctrina "surte efectos cuando un hecho esencial para el

---

[1] Además, desvirtúa la naturaleza misma de la vista preliminar, según delineada en *Pueblo v. Rodríguez Aponte,* 116 D.P.R. 653, 665 (1985):

"En resumen, nuestra jurisprudencia ha establecido que: (1) el objeto central de la vista preliminar *no es hacer una adjudicación en los méritos en cuanto a la culpabilidad o inocencia del acusado*; (2) aunque se trata de una función propiamente judicial, *no es 'un mini juicio'*; (3) el fiscal *no tiene que presentar toda la prueba que posea*; (4) la vista está encaminada a proteger a la persona imputada a través de un filtro o cedazo judicial por el cual el Estado tiene que pasar prueba, y demostrar si está justificado o no a intervenir con la libertad de un ciudadano y someterlo a los rigores y contingencias de un juicio plenario, y (5) una vez demuestra y se justifica esta intervención, la vista ha cumplido su propósito de ley." (Énfasis suplido.)

Precisamente porque la vista preliminar no es un mini juicio y el Fiscal no tiene que presentar toda la prueba disponible, no cabe invocar *el principio de buena fe en materia litigiosa.*

pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final. Como resultado, tal determinación es concluyente en un segundo pleito *entre las mismas partes,* aunque estén involucradas causas de acción distintas. *Vidal v. Monagas,* 66 D.P.R. 622 (1946); *Long Corporation v. Tribl. de Distrito,* 72 D.P.R. 788 (1951); *Fuentes v. Tribl. de Distrito,* 73 D.P.R. 959 (1952); *Pereira v. Hernández,* 83 D.P.R. 160 (1961)". (Énfasis en el original.) *A & P Gen. Contractors v. Asoc. Caná,* 110 D.P.R. 753, 762–763 (1981).

Como resolvimos en *A & P Gen. Contractors v. Asoc. Caná,* supra, pág. 766:

> "[s]e entiende que hay identidad de personas siempre que los litigantes del segundo pleito sean causahabientes de los que contendieron en el pleito anterior, o *estén unidos a ellos por vínculos de solidaridad ...*". (Énfasis suplido.) 31 L.P.R.A. sec. 3343.
>
> Los vínculos de solidaridad requeridos para que exista la identidad de personas son aquellos en los cuales el "que litiga en el segundo pleito ejercita la misma acción e invoca iguales fundamentos y se apoya en los mismos títulos que en el primero". *Sucn. Zayas Berríos v. Berríos,* 90 D.P.R. 551, 565 (1964); *González v. Méndez, et al.,* 15 D.P.R. 701, 717 (1909). La solidaridad que se persigue es aquella capaz de situar en posición tal a las partes, como si fueran una sola en relación a las prestaciones que puedan estar en litigio, y es el mismo tipo de relación que se produce entre el causahabiente y el causante. Concluimos que el hecho de que las partes en ambos pleitos se encuentren en posición de deudores solidarios no es suficiente para lograr lo anterior.

No estamos frente a ninguno de los dos (2) supuestos que jurídicamente configuran la "identidad de personas". Los litigantes del pleito criminal y el de confiscación civil no están en una relación causahabiente-causante ni de solidaridad. En cuanto a la primera relación, su inaplicabilidad es obvia; sobre la segunda,[2] basta recordar que el

---

[2] En *A & P Gen. Contractors v. Asoc. Caná,* 110 D.P.R. 753 (1981), concluimos que no se daba la solidaridad para efectos de "identidad de personas", aun cuando las

demandante recurrente Carlos F. no ejercita la misma acción, tampoco invoca iguales fundamentos y, mucho menos, se apoya en los mismos títulos que en el caso penal adujera el acusado Santana Ramírez.

Contrario a lo resuelto por la mayoría, la doctrina de mutualidad que rige el requisito de identidad de partes no se configura en el caso ante nos; menos aún *Rodríguez Rodríguez v. Colberg Comas*, 131 D.P.R. 212 (1992), no sirve para sustentar tal contención.

En dicho caso, la viuda e hijos de Jesús Ruiz Martínez demandaron en el foro local al doctor Colberg Comas por alegada impericia médica que tuvo como consecuencia la muerte de Ruiz Martínez. Por los mismos hechos, otro de los hijos de Ruiz Martínez —Jesús Ruiz Rodríguez, residente de Nueva York— demandó en el foro federal, acción que culminó en veredicto a su favor. En el pleito federal fungieron como sus testigos los codemandantes del pleito local, quienes apoyaron las alegaciones de su hermano demandante. Al igual que éste, testificaron sobre sus sufrimientos, e incluso su perito, anunciado en el Tribunal Superior, fue usado en la corte federal.

Ya en el foro local, los codemandantes solicitaron una sentencia sumaria parcial al esgrimir ofensivamente la sentencia del foro federal contra el médico demandado para impedirle a éste que negara la negligencia. Éste se opuso por entender que no existía la mutualidad o identidad de partes necesaria para aplicar la doctrina de impedimento colateral por sentencia. El foro sentenciador dictó una sentencia sumaria parcial. Al revocar dicho dictamen explicamos la naturaleza de la doctrina de mutualidad, remontándonos a *Andreu v. P.R. Ry., L. & P.*, 33 D.P.R. 617 (1924), y citamos la disposición legal entonces vigente (Art. 421 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec.

---

partes en ambos pleitos estuvieran en posición de deudores solidarios. Señalamos que esa misma relación producía efectos diferentes para las partes; para una, tan sólo una acción de reivindicación de prenda, y para la otra, una acción de daños de tipo contractual.

1793) que recoge el criterio de mutualidad que rige el requisito de identidad de partes:

"El efecto de una sentencia o decreto definitivo en una acción o un procedimiento especial ante un tribunal o juez de Puerto Rico o de los Estados Unidos con jurisdicción para pronunciar sentencia o decreto es como sigue:

(2) En los demás casos, el fallo o decreto, *en cuanto a la materia directamente juzgada*, será concluyente *entre las partes y sus sucesores en interés* por título adquirido posteriormente al comienzo de la acción o del procedimiento especial, *las cuales estuvieren litigando por la misma cosa, bajo el mismo título, y en el mismo carácter, siempre que tuvieren noticia expresa o tácita de estarse substanciando la acción o procedimiento*. (Énfasis suplido.)." *Rodríguez Rodríguez v. Colberg Comas*, supra, pág. 221.

Expresamos entonces que dicho artículo es similar al Art. 1204 del Código Civil, 31 L.P.R.A. sec. 3343.

Analizamos en *Rodríguez Rodríguez v. Colberg Comas*, supra, pág. 225, los hechos del caso a la luz de la normativa en *Sucn. Zayas Berríos v. Berríos*, 90 D.P.R. 551, 566 (1964),[3] y expresamos:

Se requiere que quien no fue parte formal se beneficie personalmente de la acción de quien sí fue parte y en efecto controle la actuación de ésta.

Esa no es la situación en el caso ante nos. Los aquí recurridos fueron *testigos en el foro federal para beneficio exclusivo* del Sr. Jesús Ruiz Martínez, quien reclamó por sus daños y perjuicios *personalísimos*, los que alegó sufrir a consecuencia de la muerte

---

[3] En dicho caso, Justo Berríos fue demandado por los hermanos Luis y Juan Zayas Salgado, así como por la madre de éstos, en reivindicación de una finca. Berríos expresó que el título de la finca se había adjudicado a su favor en pleito de reivindicación instado por él contra Diego Torres Rodríguez, quien en dicho pleito representaba en realidad los intereses de los demandantes del pleito posterior. Éstos habían declarado a favor de Torres en el pleito previo.

Determinamos entonces que existía la solidaridad necesaria entre los demandantes en el pleito posterior y Torres en el anterior, ya que Torres en el primer pleito era una parte puramente nominal, siendo la verdaderamente interesada los codemandantes del pleito posterior, pues se beneficiaban de la situación del demandado nominal y en efecto controlaban su actuación, además de que la defensa en el primer pleito se había interpuesto a favor de los codemandantes del segundo pleito, quienes habían tenido la oportunidad de defender sus derechos en dicha ocasión.

de su padre. El Sr. Jesús Ruiz Martínez *no era una parte nominal* en dicho pleito sino "la parte real, verdaderamente interesada como [demandante] en tal causa". No vemos, pues, que los aquí recurridos y el demandante en el pleito federal estén unidos por tal vínculo de solidaridad que a los efectos de la aplicación de la doctrina de cosa juzgada, en su modalidad de impedimento colateral, se cumpla en este caso con el requisito de identidad de las personas de los litigantes y la calidad con que lo fueron en aquel pleito. (Énfasis en original.)

Si en el caso de *Rodríguez Rodríguez v. Colberg Comas*, supra, negamos la existencia de identidad de las partes en el caso de *hermanos* que presentaron pleitos civiles de daños y perjuicios por los mismos hechos ante foros distintos —siendo la parte demandada la misma, así como los testigos, perito y prueba documental— ¿cómo vamos a reconocerla en el contexto de un pleito criminal y uno civil de confiscación, los que por su naturaleza son acciones separadas con cargas de prueba distinta y cuya imbricación hemos reconocido estrictamente cuando ha mediado una absolución en los méritos de la persona a quien luego se le intenta confiscar la propiedad?

Estamos ante un absurdo jurídico. *No cabe hablar de que Del Toro Lugo controló el pleito penal ni que fue una verdadera parte en la vista preliminar, en que Martín Santana Ramírez defendió estrictamente su interés personalísimo a su libertad al declarar únicamente en su beneficio.* Ciertamente, Del Toro Lugo no litigó por la misma cosa (el automóvil) que Santana (su libertad), ni bajo el mismo título y carácter.

Más aún, al seguir lo resuelto en *A & P Gen. Contractors v. Asoc. Caná*, supra, en el cual no reconocimos relación de solidaridad entre deudores solidarios porque esa relación producía efectos distintos para las partes, igualmente en el caso ante nos la supuesta relación de solidaridad produce para una parte su libertad y, para la otra, la recuperación física de su automóvil.

*¿Podemos soslayar entonces la esencia de la doctrina de mutualidad diciendo que el estatuto de confiscaciones, por*

*las características criminosas que imparte al objeto que ha de ser confiscado, crea una relación mutua entre el sujeto que comete el delito y el titular del bien a ser confiscado? Obviamente no.*

La decisión en *Carlo v. Srio. de Justicia*, supra, se limitó a unos hechos en los cuales *un acusado previamente absuelto* en un juicio en los *méritos* era la *misma persona* a quien se le pretendía confiscar su propiedad. Así lo cualificamos prístinamente:

> *La decisión que hoy tomamos está estrictamente ceñida a la situación de derecho que se produce al concurrir circunstancias determinantes, a saber: que el acusado es dueño del vehículo confiscado*; que su absolución en los *méritos* inevitablemente comprende la adjudicación de la cuestión central de que no utilizó el vehículo para transportar material prohibido; que la sentencia absolutoria en juicio tiene un valor y trascendencia que amparan no sólo la libertad, sino también el derecho de propiedad del absuelto, y que el automóvil no es por su naturaleza instrumento de crimen y sí un bien mueble destinado al aprovechamiento por su dueño en actividades lícitas. (Énfasis suplido.) *Carlo v. Srio. de Justicia*, supra, págs. 364–365.

La mayoría parece olvidar que en *Carlo v. Srio. de Justicia*, supra, pág. 365, lo determinante fueron los hechos:

> La vinculación de procedimientos y la introducción del interés particular del dueño inocente en contraposición al legítimo interés de orden público al que sirve la confiscación, es rara excepción que sólo se concreta en circunstancias de extrema exigencia revestidas de irrecusable validez constitucional, aquí presentes.

En definitiva, no podemos hablar aquí de vincular dos (2) procesos diferentes contra partes distintas. La determinación de no causa en vista preliminar dista mucho de ser calificada en los *méritos*; máxime contra una parte *distinta* a la que instó el pleito de confiscación.

## II

La inaplicabilidad de la doctrina de "impedimento colateral" pone de manifiesto el principio rector de que las acciones son independientes, lo cual nos traslada a la órbita del "dueño tercero inocente" en que

... prevalece la doctrina de que el procedimiento de confiscación va dirigido contra el vehículo mismo y no contra sus dueños y que por consiguiente los derechos que sobre el vehículo puedan tener terceros inocentes no están protegidos, excepto en aquellos casos en que se demuestre que la posesión del vehículo ha sido obtenida por el infractor sin el consentimiento expreso [o] implícito del dueño o del tercero inocente, como sucede cuando el vehículo ha sido hurtado, y si el dueño o tercero interesado directa o indirectamente ha puesto el vehículo en posesión del infractor o de la persona bajo la cual ésta actúa, los derechos del dueño o tercero interesados en tales circunstancias corren la suerte del uso a que el poseedor pueda someter el vehículo. *E.L.A. v. Tribunal Superior*, 94 D.P.R. 717, 721 (1967). Véase *General Motors Acceptance v. Brañuela*, 61 D.P.R. 725 (1943).[4]

Al negarle al propietario la defensa de "dueño inocente" o "tercero inocente", dijimos en *E.L.A. v. Tribunal Superior*, supra, pág. 722:

La posesión del vehículo por Rodríguez estaba en ese momento autorizada por el arrendatario del mismo. No hay base para concluir que Rodríguez había cometido el delito de hurto de uso del vehículo en el momento de infringir la Ley de la Bolita. Tampoco protege al tercero el hecho de que Ortiz hubiera prohibido a Rodríguez usar el vehículo para otros fines ni el hecho de que ignorara que Rodríguez usaba el vehículo en relación con el juego prohibido de la Bolita ya que el uso no autorizado de un vehículo por un empleado no protege al dueño del

---

[4] La propia mayoría reconoce que "[l]a confiscación civil constituye una *acción independiente del resultado de la acción penal* que por el mismo delito el Estado pueda incoar contra un sospechoso en particular, de haber alguno". (Énfasis en el original.) Opinión mayoritaria, pág. 984.

Por lo tanto, si en la vista preliminar contra un tercero —que no constituye una adjudicación en los *méritos*— se determina "no causa", ello no obsta para que en un pleito independiente de confiscación se utilice la misma u otra prueba para sostenerla.

vehículo. *Metro Taxicabs v. Tesorero*, 73 D.P.R. 171 (1952). (Escolio omitido.)

Y en *Carlo v. Srio. de Justicia*, supra, reconocimos un supuesto adicional para proteger al dueño inocente. Citando a *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 688 (1974), puntualizamos:

"Por lo tanto queda implícito que sería difícil el reclamo constitucional de un dueño cuya propiedad sujeta a confiscación le ha sido quitada sin su concurso o consentimiento. *Ibid.* pág. 364 [2 L.Ed. 643]; *Goldsmith-Grant Co. v. United States*, 254 U.S., pág. 512 [65 L.Ed. 376]; *United States v. One Ford Coupe Automobile*, 272 U.S., pág. 333 [71 L.Ed. 279, 47 A.L.R. 1025]; *Van Oster v. Kansas*, 272 U.S., pág. 467 [71 L.Ed. 354, 47 A.L.R. 1044]. De igual modo, lo mismo podrá decirse de un dueño que prueba no sólo que él estaba desconectado y desapercibido de la actividad delictiva, *mas también que él había hecho todo cuanto razonablemente podía esperarse para impedir el uso prohibido de su propiedad*; porque en tal caso sería difícil concluir que la confiscación servía a propósitos legítimos y que no era indebidamente opresiva." (Énfasis suplido.) *Carlo v. Srio. de Justicia*, supra, pág. 361.

En *Calero-Toledo v. Pearson Yacht Leasing Co.*, supra, el Tribunal Supremo federal concluyó que el apelado había dado de forma voluntaria la posesión de su yate a los arrendatarios y no alegó ni presentó prueba de que hizo todo lo que razonablemente podía para evitar su uso ilícito.([5])

---

([5]) *Austin v. United States*, 509 U.S. 602 (1993), cita a *Brig Malek Adhel*, 2 How., pág. 233, y señala que allí el reclamo de inocencia de los dueños se limitó tan sólo a alegar que nunca habían contemplado o autorizado los actos delictivos cometidos con su propiedad.

Posterior a *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663 (1974), muchos tribunales han resuelto que la inocencia de un tercero, dueño de la propiedad confiscada, no es defensa por sí sola. Así, por ejemplo, se ha sostenido la confiscación a un esposo que, por no intervenir con su esposa, no le preguntó a ella y al hermano de él detalle alguno sobre un viaje que iban a dar en el vehículo. Se resolvió que no demostró haber hecho todo lo que razonablemente podía esperarse para evitar un uso ilícito del vehículo. *United States v. One 1983 Pontiac Grand Prix*, 604 F. Supp. 893 (E.D. Mich. 1985).

En *U.S. v. One Rockwell Intern. Commander 690 c/840*, 594 F. Supp. 133 (D. N.D. 1984), revocado por otros fundamentos en 754 F.2d 284 (8vo Cir. 1985), se decidió que aunque el arrendador de una aeronave no estaba envuelto ni estaba al

*Igual sucede en el de autos.* El demandante recurrente Carlos F. no hizo alegación ni presentó prueba de haber hecho todo lo que razonablemente podía para evitar el uso ilegal de su vehículo.([6])

Para reconocer la condición de "dueño inocente" y anular la confiscación no basta una mera alegación de inocencia; es menester probar las diligencias reales hechas para evitar el uso ilícito del automóvil.

> Si pretendemos asimilar criterios de intención criminal cuando se trata de terceros *concederíamos una inmunidad franca a los ofensores de la ley que a través de una hábil estratagema* estarían en condiciones de violarla empleando vehículos ajenos sin el riesgo de la confiscación. *Además, ello conduciría a la posición insostenible de que sería absoluta la inmunidad del tercero (dueño del vehículo) si dentro del procedimiento de confiscación hubiera que establecerse su responsabilidad criminal en un delito público cometido por otra persona.* (Énfasis suplido.) *E.L.A. v. Tribunal Superior*, supra, págs. 721–722.

### III

Aclarado el panorama decisorio, la circunstancia de que el hijo del demandante recurrente Carlos F. no fuera acusado no nos priva de aquilatar —como lo hizo el ilustrado foro de instancia— *toda la prueba* en el pleito indepen-

---

tanto de la actividad ilegal de transportar drogas en la misma, no probó haber hecho todo lo que razonablemente podía hacer para evitar que se utilizara en transacciones de narcóticos.

Se ha sostenido la confiscación de una embarcación porque sus dueños no hicieron todo lo razonablemente esperado para evitar una transacción de marihuana en ella, no requiriendo identificación del individuo a quien le fletaron el barco ni obtuvieron información sobre el hombre de parte de las agencias competentes, además de que inquirieron superficialmente en la comunidad sobre la reputación del hombre. *U.S. v. One (1) Stapelton Pleasure Vessel, Etc.*, 575 F. Supp. 473 (S.D. Fla. 1983).

([6]) Se limitó a señalar:

"Se impugna la confiscación en base a que dicha confiscación fue ilegal, toda vez que ni el demandante ni el conductor del vehículo han usado dicho vehículo en forma alguna para trasladar, cargar, transportar o llevar droga narcótica alguna y que el poseedor y/o dueño del vehículo, aquí demandante, ni el conductor del mismo, Carlos del Toro Ortiz, hijo del demandante han sido acusados de acto delictivo alguno con relación a esta confiscación. Que de haberse ocupado evidencia delictiva alguna, la misma fue ocupada en otra persona distinta al demandante y/o al conductor del vehículo." Caso Núm. RE-86-313, Revisión, pág. 2.

diente de confiscación y determinar que tenía *posesión constructiva* de la marihuana.

"... No es indispensable, pues, que el acusado ejecute personalmente el acto delictivo y basta con su presencia pasiva, *siempre que su responsabilidad como coautor pueda establecerse* por actos anteriores, o como el resultado de una conspiración en que participó, [citas], o *de un* designio común". (Énfasis suplido.) *Pueblo v. Aponte González*, 83 D.P.R. 511, 519–520 (1961). Debe mantenerse presente que el elemento de "concierto y común acuerdo o designio común", como cualquier otro hecho en controversia, puede ser establecido mediante prueba indirecta o circunstancial, *Pueblo v. Cancel Peraza*, 106 D.P.R. 28 (1977), y que la evidencia circunstancial es intrínsecamente igual que la evidencia directa. *Pueblo v. Salgado Velázquez*, 93 D.P.R. 380 (1966). En cuanto a la "posesión" de los artículos prohibidos envueltos en este caso debe recordarse, por último, que *la ley contempla* no sólo la tenencia física *inmediata por un individuo* sino que la *posesión común que ocurre cuando varias personas, con conocimiento, comparten el control sobre el artículo delictivo; esto es, la llamada "posesión constructiva", Pueblo v. Rosa Burgos*, 103 D.P.R. 478, 479 (1975). (Énfasis suplido.) *Pueblo v. Rivera Rivera*, 117 D.P.R. 283, 294 (1986).

Sobre el particular, son hechos no contradichos de que Del Toro Ortiz, hijo del demandante Del Toro Lugo, conducía *contra* el tránsito y el policía Torres Bonilla, con validez "intervino y le dio alcance hasta detenerlo". Percibió "un fuerte olor a marihuana" y observó sobre el asiento trasero la bolsa transparente que la contenía. No podemos ser ingenuos. Estos hechos revelan que su hijo *conocía lo que pasaba y compartía el control sobre el objeto delictivo* (marihuana). Difícilmente puede calificarse como "tercero inocente" al demandante Del Toro Lugo.

Nuestro análisis no contraviene *Austin v. United States*, 509 U.S. 602 (1993), que la mayoría invoca para sostener que "la ficción de que el objeto se considera el ofensor primordial y no su propietario descansa en la noción de que aquel propietario *que ha permitido que su propiedad se vea involucrada en un acto delictivo ha actuado negligentemente*". (Énfasis en el original.) Opinión mayori-

taria, pág. 987 esc. 11. Como dueño, Del Toro Lugo no hizo todo lo que razonablemente podía, no es "inocente" y le es aplicable la regla general que justifica la confiscación en virtud de dos (2) fundamentos: "...que la propiedad misma es 'culpable de la ofensa', y que el dueño debe responder por las malas actuaciones de otros a quienes confíe su propiedad. Ambas teorías descansan, en el fondo, en la noción de que el dueño ha sido negligente en permitir que su propiedad se utilice mal y que él es apropiadamente castigado por esa negligencia." (Traducción nuestra.) *Austin v. United States*, supra, pág. 615.

En resumen, no estamos ante una absolución en los méritos de un acusado que luego impugna la confiscación; no aplica la doctrina de *Carlo v. Srio. de Justicia*, supra, sobre "impedimento colateral por sentencia"; y el dueño del vehículo no es un "tercero inocente".