EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ovidio E. Rodríguez Díaz, Geisha Mary Rodríguez Díaz y Mía Rodríguez Díaz, menores de edad representados por su madre con patria potestad, Rose Marie Díaz Ramos<br><br>        Peticionarios<br><br>            vs.<br><br> Estado Libre Asociado de Puerto Rico, Policía de Puerto Rico, Departamento de Hacienda, Héctor Rojas Rivera y/o Sucn. de Héctor Rojas Rivera compuesta por Fulano, Sutano y Perensejo, la Sucn. de Don Rufo González Guzmán compuesta por Rufo González Rosario, Harold González Rosario, Paul González Rosario y Doña Adalberta Rosario Viuda de González<br><br>        Recurridos | Certiorari<br><br>2008 TSPR 120<br><br> 174 DPR _____ |

Número del Caso: CC-2007-796


Fecha: 14 de julio de 2008


Tribunal de Apelaciones:

            Región Judicial de Carolina

Juez Ponente:

            Hon. Carlos Rivera Martínez

Oficina del Procurador General:

            Lcdo. Reinaldo Camps Del Valle
            Procurador General Auxiliar

Abogados de la Parte Peticionaria:

            Lcdo. Héctor L. Peña De León
            Lcdo. José R. Reyes Hernández

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ovidio E. Rodríguez Díaz, Geisha *
Mary Rodríguez Díaz y Mía       *
Rodríguez Díaz, menores de edad *
representados por su madre con  *    CC-2007-796
patria potestad, Rose Marie     *
Díaz Ramos                      *
                                *
    Peticionarios               *
                                *
        vs.                     *
                                *
Estado Libre Asociado de Puerto *
Rico, Policía de Puerto Rico,   *    Certiorari
Departamento de Hacienda, Héctor *
Rojas Rivera y/o Sucn. de Héctor *
Rojas Rivera compuesta por      *
Fulano, Sutano y Perensejo, la  *
Sucn. de Don Rufo González      *
Guzmán compuesta por Rufo       *
González Rosario, Harold        *
González Rosario, Paul González *
Rosario y Doña Adalberta Rosario *
Viuda de González               *
                                *
    Recurridos                  *
*********************************

Opinión del Tribunal emitida por el Juez Presidente señor Hernández Denton

San Juan, Puerto Rico, a 14 de julio de 2008.

Los peculiares hechos que dan paso a la controversia ante nuestra consideración no sólo nos dan la oportunidad de precisar el alcance de la Ley Uniforme de Confiscaciones, sino también de pronunciarnos con relación a figuras jurídicas sobre las cuales nos hemos expresado en muy pocas ocasiones, a pesar de estar definidas en nuestro Código Civil desde su adopción a finales del Siglo XIX. En particular, nos corresponde delimitar las definiciones de

tesoro oculto y hallazgo de cosa mueble, con el fin de determinar el tratamiento que se le debe ofrecer a dos "pailas de pintura" repletas de dinero en efectivo, encontradas por dos jóvenes ocultas entre la vegetación en las cercanías de un manantial en el Municipio de Carolina.

Luego de estudiar detenidamente la presente controversia, resolvemos que el dinero encontrado debe ser tratado como un hallazgo de cosa mueble. De esta forma, revocamos la Sentencia emitida en este caso por el Tribunal de Apelaciones, en cuanto se negó a aplicar dicha figura y, en su lugar, aplicó la Ley Uniforme de Confiscaciones a pesar de la ausencia de prueba que vinculara el referido dinero con la comisión de delito alguno.

I

Los hechos de este caso no están en controversia. El 25 de agosto de 1994, el Sr. Ovidio Rodríguez Rivera, quien para esa fecha contaba con diecisiete (17) años de edad, salió a buscar agua a un manantial ubicado en unos predios del Sector Saint Just, en Carolina. El señor Rodríguez Rivera estaba acompañado de su amigo, el Sr. Héctor Rojas Rivera. Una vez en el lugar, el señor Rodríguez Rivera se alejó alrededor de 50 a 75 metros, ya que sintió urgencia de hacer una necesidad fisiológica. En ese momento, divisó entre las plantas dos recipientes plásticos o "pailas de pintura". Al abrirlos, encontró que contenían una gran cantidad de dinero en efectivo, por lo que llamó a su amigo y decidieron llevarse "las pailas" con el dinero. Los

jóvenes acordaron llevar el dinero a la residencia de la madre del señor Rodríguez Rivera, la Sra. Miriam Rivera Ayuso, y lo ocultaron en el armario de una de las habitaciones. Esa noche los jóvenes utilizaron alrededor de quinientos dólares ($500) -provenientes del dinero encontrado- para compartir con sus amigos y comprar ropa y calzado deportivo.

Al día siguiente, la señora Rivera Ayuso encontró los recipientes y, por desconocer de dónde provenían, decidió llamar a la Policía. Los agentes de la Policía incautaron el dinero y luego de contabilizarlo determinaron que la suma total era de noventa y un mil setecientos setenta y siete dólares ($91,777). Luego de incautar el dinero, la Policía procedió a consignarlo en el Departamento de Hacienda. El 18 de mayo de 1995, el señor Rodríguez Rivera solicitó ante dicho departamento la devolución del dinero, pero el mismo nunca le fue devuelto. Por tal razón, el 5 de septiembre de 1996 presentó una demanda sobre cobro de dinero y daños y perjuicios contra el Estado Libre Asociado de Puerto Rico y el Departamento de Hacienda.

Posteriormente, la demanda fue enmendada para incluir a la sucesión de Héctor Rojas Rivera, amigo del señor Rodríguez Rivera y la Sucesión de Rufino González Guzmán, dueño del predio donde fue encontrado el dinero. La Sucesión González Guzmán compareció al tribunal y aseguró desconocer el origen del dinero encontrado, así como la

identidad del dueño. Además, afirmó no tener interés en el dinero.

Luego de celebrar una inspección ocular y la vista en su fondo, el tribunal entendió que la controversia a resolver era si el dinero encontrado se trataba de una cosa perdida, abandonada o de un tesoro oculto.

Examinado el asunto, el tribunal concluyó que se trataba del hallazgo de una cosa mueble con dueño no identificado, pero que al utilizar parte del dinero antes de informar sobre el hallazgo, los menores no cumplieron con el procedimiento establecido por el Artículo 555 del Código Civil, 31 L.P.R.A. sec. 1956, para que pudieran reclamar cualquier derecho que tuvieran sobre el mismo. De igual forma, al descartar la aplicación de otras doctrinas, el tribunal determinó que no se trataba de un tesoro oculto por carecer del elemento de antigüedad, ni cosa abandonada por entender que la doctrina jurídica del abandono requería una declaración de voluntad y un acto real en cuanto al abandono de la posesión de la propiedad. Expresó que conforme a nuestro Código Civil se debe presumir que la cosa encontrada no ha sido abandonada, sino que se ha perdido.

A base de todo ello, el tribunal declaró no ha lugar la demanda y ordenó la publicación del hallazgo, de conformidad con lo dispuesto en el Artículo 555 del Código Civil, *supra*. Además, determinó que de no aparecer el

dueño, la cosa o su valor pasaría a ser propiedad del Municipio de Carolina.

Inconforme, el señor Rodríguez Rivera recurrió ante el Tribunal de Apelaciones. En esencia, adujo que erró el tribunal de instancia al aplicar la figura del hallazgo del Artículo 555 del Código Civil, *supra*, en lugar de la figura del tesoro oculto que regula el Artículo 554 del mismo cuerpo legal, 31 L.P.R.A. sec. 1955. Asimismo, alegó que erró el tribunal al determinar que la conducta del señor Rodríguez Rivera era compatible con el propósito o intención de apropiarse del dinero, cuando al momento de los hechos éste era incapaz por minoría de edad.

Luego que el tribunal apelativo le concediera un término a la parte apelada para presentar su alegato, quien único compareció fue el E.L.A. –por conducto del Procurador General– y solicitó que se le eximiera de comparecer dado que el tribunal de instancia desestimó la demanda en su contra y que el señor Rodríguez Rivera no hizo ningún señalamiento al respecto. Además, sostuvo que independientemente de si se trataba de un hallazgo de cosa mueble o de un tesoro oculto, el E.L.A. no era el acreedor, por lo que a su juicio no era parte en el litigio. Por último, negó que en el caso de autos fuera aplicable la Ley Uniforme de Confiscaciones, 34 L.P.R.A. sec. 1723, *et seq*, toda vez que el dinero encontrado no había sido relacionado con actividad delictiva alguna.

Examinados los planteamientos de los comparecientes, el Tribunal de Apelaciones determinó que no eran aplicables al caso de autos las disposiciones del Código Civil referentes a las figuras de propiedad mueble abandonada o tesoro oculto. En su lugar, aplicó la Ley Uniforme de Confiscaciones, *supra*, tras inferir la ilegitimidad o ilegalidad del dinero encontrado. A base de ello, resolvió que el dinero debía permanecer consignado en el Departamento de Hacienda hasta tanto su titular se presente a reclamarlo, acreditando la legitimidad de su procedencia. Según el foro apelativo, será luego de establecida la titularidad y legitimidad del dinero que, antes de ordenar la devolución, se determinará qué derecho, si alguno, le corresponde al hallador a la luz de lo dispuesto en el Código Civil. Por último, resolvió que de no aparecer el titular del dinero, el Estado procedería a disponer del mismo conforme a la reglamentación vigente.

Aún inconforme, el señor Rodríguez Rivera acude ante nos y solicita la revocación del dictamen recurrido.[1] En síntesis, sostiene que el foro apelativo erró al sustituir las determinaciones de hecho formuladas por el tribunal de instancia. Igualmente, impugna la aplicación de la Ley Uniforme de Confiscaciones, *supra*, al caso de autos y aduce que procede la devolución del dinero conforme a las

---

[1] Por el señor Rodríguez Rivera haber fallecido durante el transcurso del pleito judicial, comparecen sus hijas menores de edad, representadas por su madre.

disposiciones del Código Civil sobre la figura del tesoro oculto.

Examinada la petición, el pasado 13 de diciembre de 2007 le concedimos término al E.L.A. para que mostrara causa por la cual no debíamos expedir el auto solicitado y revocar la sentencia recurrida. El E.L.A. ha comparecido oportunamente. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II

La Ley Uniforme de Confiscaciones, *supra*, dispone que estará sujeta a confiscación a favor del Estado Libre Asociado de Puerto Rico toda propiedad que sea utilizada en relación a, o sea el resultado o producto de la comisión de delitos graves y de aquellos delitos menos graves en que por ley se autorice la confiscación, cuando tales delitos graves y menos graves estén tipificados en el Código Penal del Estado Libre Asociado de Puerto Rico, en las leyes de sustancias controladas, de armas y explosivos, en las leyes contra el crimen organizado, en las leyes de juegos prohibidos, bebidas alcohólicas, leyes fiscales, leyes contra la apropiación ilegal de vehículos, leyes de vehículos y tránsito y de embarcaciones, así como en otras leyes y aquella propiedad que esté sujeta a una sentencia de confiscación que así lo autorice. 34 L.P.R.A. sec. 1723(a).

La ley establece una presunción de que el dinero en efectivo e instrumentos negociables que se encuentren en el

lugar o cercanías del lugar en donde ocurra la incautación, son el producto de la actividad ilegal, o han sido utilizados o se han intentado utilizar para llevar a cabo el acto que da lugar a la confiscación. Cuando se pudiere determinar que los referidos dineros o instrumentos negociables no tenían nexo alguno con el delito imputado, se depositarán los mismos en la colecturía de rentas internas más cercana al lugar de la ocupación para que el Secretario de Hacienda los devuelva a su dueño, siguiendo los procedimientos vigentes en el Departamento de Hacienda. *Id.*

En pasadas ocasiones hemos definido la confiscación como el acto de ocupación que lleva a cabo el Estado de todo derecho de propiedad sobre cualesquiera bienes que hayan sido utilizados en relación con la comisión de ciertos delitos. Centeno Rodríguez v. E.L.A., res. el 3 de mayo de 2007, 2007 T.S.P.R. 81; Del Toro Lugo v. E.L.A., 136 D.P.R. 973, 980-981 (1994). El Estado puede apropiarse de bienes relacionados con alguna actividad criminal mediante una acción de confiscación dentro del mismo procedimiento penal. Esta acción es conocida como confiscación criminal y la misma depende del resultado del proceso penal que se lleva contra el imputado. En estos casos la confiscación se impone como una pena adicional. Del Toro Lugo v. E.L.A., *Id.*

Ahora bien, el Estado también puede recurrir a una acción civil de confiscación, la cual hemos definido como

una acción *in rem,* en la que se imputa la utilización de la propiedad confiscada en la comisión de un delito. Del Toro Lugo v. E.L.A., *Id.* Al precisar cuáles son los elementos pertinentes a la determinación de si procede una confiscación civil, hemos expresado que dichos elementos son: **(1) prueba suficiente y preponderante de que se ha cometido un delito y (2) un nexo entre la comisión del delito y la propiedad confiscada**. (Énfasis nuestro) Véase Suárez v. E.L.A., 162 D.P.R. 43, 52 (2004); Del Toro Lugo v. E.L.A., *supra.*

La confiscación civil, por ser una acción *in rem,* puede efectuarse antes de acusar a la persona, antes de que exista una declaración de culpabilidad o absolución o antes, incluso, de que se presente algún cargo criminal. Sin embargo, para que la confiscación civil se pueda sostener, le corresponde al E.L.A. demostrar que la propiedad confiscada fue utilizada en una actividad delictiva. Así lo expresamos en Suárez v. E.L.A., *supra*, al citar la Exposición de Motivos de la Ley Núm. 18 de 1ro de enero de 2003, que enmendó la Ley Uniforme de Confiscaciones, *supra*, para atemperarla a nuestra decisión en Del Toro v. E.L.A., *supra*.

Por medio de la Ley Núm. 18, *supra*, la Asamblea Legislativa eliminó el inciso (c) del Artículo 2 de la Ley Uniforme de Confiscaciones, *supra*, que establecía la inaplicabilidad de la doctrina de cosa juzgada entre la acción civil de confiscación y el resultado favorable para

el imputado en el proceso criminal. La Asamblea Legislativa juzgó que dicho artículo vulneraba el derecho de un ciudadano a no ser privado de su propiedad sin el debido proceso de ley ni una justa compensación.

Al sostener el carácter retroactivo de la Ley Núm. 18, *supra*, y examinar su historial legislativo, así como la jurisprudencia sobre el asunto, **hemos reafirmado el vínculo necesario en todo caso de confiscación entre la propiedad confiscada y la comisión del delito**. Véase Suárez v. E.L.A., *supra* pág. 55.

En el caso de autos, el Tribunal de Apelaciones determinó que se debía aplicar la Ley Uniforme de Confiscaciones, *supra*, al dinero encontrado por el señor Rodríguez Rivera en las "pailas de pintura", a pesar de que el Estado no probó el vínculo entre el referido dinero y la comisión de delito alguno, y a pesar de la comparecencia del Procurador General oponiéndose a que se aplicara dicha legislación al caso de epígrafe.

En su comparecencia ante nos, el Procurador General reiteró que procedía la devolución del dinero y sostuvo que ante la inexistencia de prueba de que alguien haya cometido un delito, el Estado no se puede adjudicar bienes privados de un ciudadano. Además, aseguró que en el presente caso sólo hay una mera sospecha de que el dinero proviene de actividades ilegales, y que con ello no se puede cumplir con el estándar probatorio exigido por ley. De hecho, el Procurador General sostiene que la decisión de iniciar un

proceso de confiscación es una actuación discrecional de la Rama Ejecutiva, por lo que nuestra intervención con la misma sería una actuación indebida contraria a la separación de poderes.

La propia sentencia recurrida admite que no hay prueba sobre la procedencia del dinero encontrado. Sin embargo, el foro apelativo infiere que el dinero proviene de alguna actividad ilegal, apoyándose en expresiones anteriores de este Tribunal que afirman que los tribunales no deben creer aquello que ninguna persona de parecer ordinario no creería. No obstante, al igual que el Procurador General, somos del criterio que una mera sospecha o inferencia no cumple con el estándar de preponderancia de la prueba necesario para establecer el vínculo entre la propiedad objeto de confiscación y la comisión de un delito. Por lo tanto, concluimos que erró el Tribunal de Apelaciones al aplicar la Ley Uniforme de Confiscaciones, *supra*, en ausencia total de prueba que vincule el dinero encontrado con alguna actividad delictiva.

Aclarado lo anterior, debemos determinar si el dinero encontrado por el señor Rodríguez Rivera debe ser tratado como un hallazgo de propiedad mueble o como un tesoro oculto, según las definiciones provistas por el Código Civil para tales figuras.

III

A

El Código Civil de Puerto Rico dispone que se adquieren por ocupación los bienes apropiables que por su naturaleza carecen de dueño, como los animales que son objeto de la caza y pesca, el tesoro oculto y las cosas muebles abandonadas. Art. 550 Código Civil de Puerto Rico, 31 L.P.R.A. sec. 1951. En cuanto al tesoro oculto, el Artículo 286 del Código Civil lo define como el depósito oculto o ignorado de dinero, alhajas, u otros objetos preciosos cuya legítima pertenencia no conste. 31 L.P.R.A. sec. 1117. El tesoro oculto, según el citado cuerpo legal, pertenece al dueño del terreno en que se hallare. Sin embargo, cuando fuere hecho el descubrimiento en propiedad ajena o del Estado Libre Asociado de Puerto Rico o del Pueblo de los Estados Unidos de América, y por casualidad, la mitad se aplicará al descubridor. 31 L.P.R.A. sec. 1116.

La mayoría de la doctrina española coincide en algunos de los elementos constitutivos del tesoro. Comentaristas como Scaevola y Manresa sostienen que el tesoro ha de ser oculto o escondido, ha de estar compuesto sólo por dinero, alhajas o materia preciosa y ha de ser cosa sin dueño. Véase Scaevola, Código Civil, Instituto Reus, S.A., Madrid, 1949, pág. 505; Manresa y Navarro, Comentarios al Código Civil, Reus, S.A. Madrid, 1976, pág. 232. Sin embargo, el carácter antiguo o no del hallazgo parece causar gran debate entre los estudiosos y comentaristas del Código Civil.

El comentarista José Luis Moreu Ballonga sostiene que es la antigüedad del depósito el requisito esencial del concepto tesoro. En vista de ello, según Moreu Ballonga, si lo hallado no es antiguo, entonces no es tesoro. Sobre este particular, arguye que toda cosa encontrada oculta no antigua se debe asimilar al supuesto normal de hallazgo de cosas encontradas sobre la superficie del suelo, debiendo restituirse la cosa a su dueño si se conoce, publicar el hallazgo en caso contrario, y sancionarse como hurto la omisión dolosa de esta obligación con retención de la cosa. Moreu Ballonga, Ocupación, Hallazgo y Tesoro; Bosch, S.A., Barcelona, 1980, págs. 279-282.

El mencionado tratadista basa su tesis en que bajo el derecho romano se exigía el elemento de antigüedad para diferenciar el tesoro de otros depósitos. Éste expresa, además, que en el caso de los hallazgos antiguos no es necesaria la consignación, ya que por su antigüedad se presume que el dueño, si lo tuviera, no aparecerá para reclamarlo. A igual conclusión llega Ignacio Sierra Gil de la Cuesta quien expresa en términos categóricos que el tesoro supone que "la cosa es antigua o fue depositada en tiempos pretéritos". Véase Marín Castán, Comentario del Código Civil, Sierra Gil de la Cuesta, Tomo 4, Editorial Bosch, Barcelona, 2000, pág. 124.

Sin embargo, el propio Moreu Ballonga reconoce que la mayoría de la doctrina ha rechazado la antigüedad del depósito como requisito indispensable para catalogarlo como

tesoro. Más bien, la doctrina española prevaleciente señala el carácter inhallable del dueño del tesoro como lo crucial al definir la referida figura jurídica. Al rechazar el carácter indispensable del elemento de antigüedad, Manresa subraya que lo importante es que no conste el dueño legítimo del depósito en cuestión. En su análisis sobre la figura del tesoro expresa lo siguiente:

> Tres condiciones exige nuestro Código siguiendo nuestra tradición jurídica (1) en el tesoro para los efectos de la ley: 1.a, que sea oculto e ignorado; es decir, que constituya el hallazgo del mismo un verdadero descubrimiento; 2.a, que ha de estar constituido el tesoro por dinero, alhajas u otros objetos preciosos. **El Código prescinde racionalmente del calificativo de antiguos que el Derecho anterior aplicaba a los objetos del tesoro** (Énfasis nuestro). Manresa y Navarro, *supra*, Pág. 232.

El tercer elemento, según Manresa, es que no conste el dueño legítimo.

No obstante, si bien es cierto que la doctrina rechaza la antigüedad como elemento esencial para definir la figura del tesoro, ningún tratadista niega que dicho elemento pueda ser relevante. Ahora bien, su importancia estriba no en la antigüedad por sí sola, sino en señalar la imposibilidad de hallar el dueño legítimo del depósito. A tales efectos, al explicar el abandono del elemento de antigüedad que adscribía el derecho romano a la figura del tesoro, Castán Tobeñas expresa: "[h]a suprimido, pues, el Código el requisito de la antigüedad (*vetus*), que, al fin como dice De Diego, no era exigido sino como señal o presunción de que los objetos no tenían dueño conocido". J.

Castán Tobeñas, Derecho Civil Español, Común y Foral; Reus, S.A. Madrid, 1987, Tomo II, Vol. I, pág. 318.

En iguales términos se expresa Puig Brutau, quien al acentuar la diferencia entre el tesoro y las cosas perdidas expresa que en el caso del primero, el propietario es desconocido y no es creíble que llegue a conocérsele. Puig Brutau, Fundamentos de Derecho Civil, Bosch, S.A., Barcelona, 1994, Tomo III, Vol. I, págs. 299-302. Este tratadista, citando una Sentencia del 17 de abril de 1951 del Tribunal Supremo español, señala que si bien es cierto que el Código prescinde del requisito de antigüedad del depósito al señalar los requisitos que son constitutivos de tesoro, apartándose en este aspecto del precedente romano y de alguna legislación extranjera, **"es lo cierto que la ignorancia de la legítima pertenencia del hallazgo va frecuentemente motivada por la antigüedad"**. (Énfasis nuestro) Puig Brutau, supra, pág. 301. Finalmente, y cónsono con lo anterior, Pantaleón Prieto propone que se defina el tesoro como cosa mueble cuyo dueño ya es imposible que se presente y pruebe su dominio. A. Pantaleón Prieto, Comentarios al Código Civil y Compilaciones Forales, Dirigido por Manuel Albaladejo, Revista de Derecho Privado, Tomo VIII, Vol. I, pág. 499.

Esto es, la antigüedad -aun cuando no sea el elemento decisivo para definir la figura del tesoro- es importante para determinar que el dueño del depósito ya no se presentará para probar su propiedad, lo que sí resulta

crucial para poder catalogar tal hallazgo como tesoro. Es, precisamente, la imposibilidad de que el presunto dueño se presente a probar su propiedad lo que torna inútil la publicación del hallazgo de cosa mueble dispuesto por el Código en su Artículo 555, *supra*. Por tal razón, la propiedad sobre el tesoro es adquirida por el hallador por la mera ocupación, sin que sea necesario intentar conseguir al presunto dueño, al igual que ocurre con las cosas abandonadas. Véase Art. 550 del Código Civil, *supra.*

De acuerdo a esta normativa, antes de concluir si un hallazgo debe ser catalogado como tesoro, el tribunal debe examinar las circunstancias del hallazgo y determinar si su dueño puede ser encontrado o no. Dentro de las circunstancias que el tribunal debe tomar en consideración se encuentra el elemento de la antigüedad, que –tal como ha expresado el Tribunal Supremo español– usualmente señala la imposibilidad de que el dueño legítimo se presente a probar su propiedad.

Con este marco doctrinal en mente, debemos determinar si –como aduce el peticionario– el dinero encontrado por él debe ser considerado un tesoro oculto, de manera que la propiedad sobre éste pueda derivarse de la mera ocupación.

En el caso de autos, el tribunal de instancia realizó una inspección ocular en la que pudo examinar las circunstancias del hallazgo. Tras hacer la referida inspección, el tribunal determinó que no se trataba de un tesoro. Ello en vista de que las circunstancias del

hallazgo -incluyendo, pero sin limitarse al dato de que el deposito parecía ser reciente- indicaban que el dueño podía ser encontrado si se daba paso a la publicación del mismo.

Según nuestro criterio, actuó bien el foro primario al así resolver. Su actuación es cónsona con la jurisprudencia y la doctrina antes discutida. Al descartar la aplicación de la figura del tesoro oculto al hallazgo en controversia, el tribunal tomó en cuenta que el dinero encontrado consistía de moneda de curso legal corriente, lo que señala que se trata de un depósito reciente. Además, el foro de instancia razonó que por las circunstancias particulares del hallazgo, todo parecía indicar que fue depositado en el lugar temporeramente por su dueño para luego volver a tomar posesión del mismo. Todo ello es indicativo de que el dueño del depósito sí podía ser encontrado, por lo que era improcedente aplicar la figura del tesoro oculto.

Debemos recordar que conforme al Tribunal Supremo español, así como la doctrina sobre el Código Civil prevaleciente, el elemento fundamental para definir la figura del tesoro oculto es la imposibilidad de encontrar el dueño del depósito. De esta forma, la antigüedad del hallazgo puede válidamente ser tomada en cuenta por el tribunal como prueba de la imposibilidad de que el dueño original se presente a probar su propiedad. Una vez el tribunal determina -como en este caso- que las circunstancias del hallazgo señalan que el dueño sí puede ser encontrado con la publicación del hallazgo, se de debe

descartar la aplicación de la figura del tesoro oculto y procede ordenar la publicación de conformidad al artículo 555 del Código Civil, *supra*.

Nos resta, pues, determinar si el depósito en cuestión debe ser tratado como un hallazgo de cosa abandonada o un hallazgo de cosa perdida o cosa mueble con dueño desconocido, en cuyo caso aplicaría el procedimiento descrito en el Artículo 555 del Código Civil, *supra.* Además, en caso de que determinemos que aplica el referido artículo, debemos resolver si –tal como determinó el foro de instancia– el señor Rodríguez Rivera perdió todo derecho sobre la cosa encontrada por haber utilizado alrededor de quinientos dólares ($500) provenientes del hallazgo e intentar quedarse con el mismo sin notificar a nadie ni hacer gestión alguna para encontrar al verdadero dueño. Veamos.

**B**

Las cosas abandonadas o cosas *nullius* se adquieren por su mera ocupación. Art. 550 Código Civil, *supra*. Para que aplique este artículo y podamos hablar de cosa abandonada, es necesario un acto deliberado de abandono. Sobre el particular, Manresa expresa que el abandono en el sentido de desapoderarse de una cosa, de renunciar al dominio sobre ella, de romper toda relación jurídica con la misma, ha de ser expreso, claro y evidente. Si no es así, la ley presume que la cosa abandonada ha sufrido extravío, que tiene un dueño; en suma, que el abandono no ha sido voluntario o

intencional. Manresa, *supra* pág. 105. Por ello, para poder hablar de cosa abandonada, las circunstancias del hallazgo deben permitirnos determinar que el dueño, en efecto, quiso abandonarla. Así, cuando una persona encuentra una cosa mueble y las circunstancias no revelan si la misma fue abandonada o está perdida, ha de suponer, en principio, que se trata de una cosa perdida. En dicho caso, no entran en juego las reglas concretas de la ocupación, sino las del hallazgo. Véase Puig Brutau, *supra,* págs. 292-293.

Al definir cosa perdida, carece de importancia el motivo por el cual la cosa mueble ha llegado a estar vacante de posesión. Puede ello haber ocurrido contra la voluntad de quien la venía poseyendo o que su último poseedor la haya abandonado de forma voluntaria, siempre que dicho abandono no conlleve la extinción de la propiedad sobre la cosa. Véase Pantaleón Prieto, *supra,* págs. 456-457. Por lo tanto, debe estimarse como cosa perdida aquella propiedad mueble que ha sido abandonada voluntariamente por su antiguo poseedor para luego recuperarla.

Como mencionáramos anteriormente, el Código Civil establece el procedimiento a seguir en los casos de hallazgos de propiedad mueble. En términos generales, el Código dispone que aquel que encuentra una cosa mueble que no sea tesoro debe restituirla a su anterior poseedor y si éste no fuere conocido, debe consignarla inmediatamente en poder del alcalde del pueblo en donde se hubiere verificado el hallazgo. El alcalde hará publicar el hallazgo fijando

avisos escritos a tal efecto en el pasillo principal del edificio municipal, en el correo y en la colecturía de rentas internas por dos semanas consecutivas. Pasados seis meses, a contar desde que terminó la publicación del aviso, sin haberse presentado el dueño, se adjudicará la cosa encontrada, o su valor, al que la halló. Art. 555 del Código Civil, *supra*.

El procedimiento dispuesto en el referido artículo está diseñado para identificar al dueño –si lo tiene– de la cosa encontrada. Sólo luego de transcurrido el término establecido para que el dueño se presente a probar su propiedad, puede el hallador reclamar la cosa y adquirir su dominio. Sobre el objetivo de este artículo nos dice Manresa que la persona que ocupa las cosas extraviadas, "al encontrarlas, no adquiere instantáneamente el dominio. Todos los anuncios, todas las formalidades, todos los plazos señalados, se destinan exclusivamente a hallar o encontrar ese dueño, todo se exige en beneficio de él." Véase Manresa, *supra*.

Por otra parte, cuando el hallador es un menor o incapaz, surgen a su cargo las obligaciones propias del hallador con la recogida de la cosa. No obstante, el menor sólo responderá, en principio, del incumplimiento de tales obligaciones en la medida en que sea capaz de culpa civil, o en que se haya enriquecido a costa de la cosa encontrada. Sobre este particular, en sus comentarios en la obra de Albaladejo, Pantaleón Prieto afirma que si el menor o

incapaz tiene capacidad natural de señorío de hecho sobre la cosa y la posee, dicho menor o incapacitado debe estar sujeto a las obligaciones propias del hallador, sin perjuicio de las limitaciones a la responsabilidad por el incumplimiento de las mismas que el ordenamiento establece a fin de protegerle. Pantaleón Prieto, *supra,* pág. 529-533.

No obstante, en ese caso, su padre o tutor, por su condición de representante legal, debe velar por el correcto cumplimiento de tales obligaciones (incluso restituyendo o consignando personalmente la cosa a nombre del representado) en el momento en que llegue a conocer el hallazgo. Si no lo hace así, su representado responderá del incumplimiento de las mismas según las reglas generales. En tal circunstancia, el derecho del premio o la adquisición de la propiedad de la cosa, corresponderá al menor o incapacitado hallador, tanto si es él mismo quien personalmente restituye o consigna la cosa, como si lo hace en su nombre su representante legal. Pantaleón Prieto, *Id*.

A la luz de lo anterior, -y luego de haber descartado que se tratara de un tesoro oculto- somos del criterio que las "pailas de pintura" encontradas por el señor Rodríguez Rivera deben ser consideradas como cosa mueble extraviada y no como cosa abandonada, cuya propiedad es adquirida por la mera ocupación. Es decir, el objeto encontrado debe ser tratado como cosa perdida con dueño desconocido. Esto es así, aun asumiendo -tal como hizo el Tribunal de

Apelaciones– que las "pailas de pintura" fueron abandonadas por su dueño para luego ir por ellas y recuperarlas.

Recordemos que la mayoría de la doctrina sostiene que en los casos en que de las circunstancias del hallazgo no surja claramente la voluntad inequívoca del dueño de la cosa hallada de desprenderse de su propiedad, se debe presumir que la cosa está perdida y no abandonada. En el caso de autos, luego de una inspección ocular, el tribunal de instancia determinó que no podía concluir que el dinero había sido abandonado de manera voluntaria e intencional por su dueño. Más bien, todo parecía indicar que su dueño lo había depositado en el lugar temporalmente para luego volver por él. Por tanto, siendo así, procedía que se diera cumplimiento a lo dispuesto en el Artículo 555 del Código Civil, *supra*.

No obstante, el señor Rodríguez Rivera, en lugar de intentar encontrar al dueño del dinero hallado en las "pailas de pintura" o consignarlo ante la autoridad competente, optó por utilizar parte del mismo para comprar ropa y calzado deportivo y compartir con sus amigos. Fue su madre, la señora Rivera Ayuso quien al encontrar las "pailas de pintura" llamó a la Policía para entregárselas. En vista de ello, el foro de instancia resolvió que el señor Rodríguez Rivera no cumplió con las obligaciones del hallador de cosa mueble, por lo que perdió el derecho a la recompensa que dispone el Código Civil. Erró el foro de instancia al así resolver.

En su sentencia, el tribunal de instancia fundamentó su determinación de excluir al señor Rodríguez Rivera de la recompensa que dispone el Código Civil, en lo resuelto por este Tribunal en Mieres, Fiscal v. Pagán, 76 D.P.R. 699 (1954). En ese caso, el Sr. Pedro Pagan Soto —a quien el Tribunal describe como un joven vendedor de periódicos— encontró un billete de lotería y luego de enterarse de que el mismo había sido premiado, acudió al Negociado de la Lotería a cobrar el premio. La dueña del billete, quien lo había perdido días antes, estaba en el lugar cuando el señor Pagan Soto fue a cobrar el premio y, tras intentar infructuosamente que se lo devolviera, presentó una denuncia en la fiscalía. A pesar de que no se radicaron cargos, las partes iniciaron un litigio para determinar a quién pertenecía el premio.

En aquella ocasión, al confirmar al foro de instancia resolvimos que el billete extraviado debía ser tratado como cosa perdida y no como cosa abandonada, por lo que se debía proceder de conformidad con el Artículo 555 del Código Civil, supra. Además, concluimos que el señor Pagan Soto no tenía derecho a la recompensa que dispone el Código Civil ya que éste incumplió con las obligaciones del hallador. Ello a pesar de que luego de presentada la denuncia ante el Ministerio Público, su padre consignó la cantidad de quince mil dólares ($15,000) por el valor del premio en controversia.

El transfondo fáctico que dio lugar a lo resuelto en
Mieres, Fiscal v. Pagán, *Id*, es claramente distinguible del
caso de autos. En primer lugar, de los hechos narrados en
la Opinión del Tribunal no surge que se tratara de un menor
de edad. Por ello, no es posible determinar si la actuación
del padre –de haber sido oportuna– hubiera beneficiado al
hijo. De otra parte, tampoco surge de los hechos que el
padre procurara que su hijo cumpliera con las obligaciones
del hallador. Lo único que sabemos es que no consignó el
billete premiado ante la autoridad competente ni lo entregó
a su antiguo dueño a pesar de conocer quien era.  Por el
contrario, no fue hasta después que el señor Pagan Soto
cobró el premio en el Negociado de la Lotería y que la
antigua dueña presentó una denuncia ante el Ministerio
Público, que su padre consignó los quince mil dólares
($15,000).

En el caso de autos, la madre del menor –la señora
Rivera Ayuso– descubrió el dinero al día siguiente del
hallazgo e inmediatamente dio parte a la Policía por
desconocer a quién pertenecía. Su conducta es cónsona con
el objetivo del Código Civil de dar oportunidad para que el
dueño original pueda presentarse a probar su propiedad.[2]

---

[2] Si bien la señora Rivera Ayuso no entregó las "pailas
de pintura" directamente al alcalde, ésta notificó del
hallazgo a la Policía y, por tanto, puso al Estado en
posición de disponer de la cosa encontrada de conformidad
al Código Civil y encontrar al dueño original.  La doctrina
ha reconocido la validez –en ciertas circunstancias– de la
entrega de la cosa encontrada a la Policía, al párroco del
lugar o la redacción de un periódico. Lo importante es que
finalmente el hallazgo pueda ser consignado en la alcaldía

Además, al así actuar, ésta cumplió con su responsabilidad como representante legal de su hijo de velar porque éste actuara de conformidad con las obligaciones del hallador y evitó que su hijo perdiera el derecho a la recompensa del Artículo 556 del Código Civil, *supra*, o su derecho de adquirir la propiedad de la cosa encontrada de no aparecer el dueño original.

Si bien el señor Rodríguez Rivera tenía capacidad para entender que el dinero no era suyo y que debía intentar encontrar el verdadero dueño (cumpliendo de esta forma con las obligaciones del hallador) lo cierto es que se debe tomar en cuenta que, por tratarse de un menor de edad, era su madre quien debía velar porque éste cumpliera con tales obligaciones.[3] Así, al entregar el dinero a la Policía –tan

---

y se publique. Véase Pantaleón Prieto, *supra*, pág. 552. De igual forma, Díez-Picazo sostiene que aún cuando el Código Civil subordina el derecho a la recompensa a la entrega de la cosa al alcalde, sería totalmente injusta la aplicación literal del precepto ya que lo que la ley premia es la actividad beneficiosa para el dueño original que se puede lograr incluso entregándole la cosa directamente a éste y no al alcalde. Díez-Picazo y Gullón, Sistema de Derecho Civil, Vol. II, Sexta Edición, Tecnos, S.A., Madrid, 1997, pág. 194.

[3] Coincidimos con el foro de instancia en cuanto señaló que no podemos imputar la misma capacidad a todos los menores y que nuestro ordenamiento hace ciertas distinciones a la hora de reconocer la capacidad de éstos para realizar distintos actos o negocios jurídicos. Es por ello que estimamos correcto concluir que el señor Rodríguez Rivera –siendo un menor de diecisiete (17) años– estaba sujeto a las obligaciones del hallador. No obstante, aun en estos casos donde el menor tiene capacidad de una voluntad natural de señorío sobre la cosa encontrada y la posee, es en última instancia su padre o tutor quien debe velar por el cumplimiento de tales obligaciones y evitar que su hijo enfrente las consecuencias de incumplir con el Código Civil, incluyendo la posibilidad de perder el derecho a la

pronto se enteró del hallazgo– la señora Rivera Ayuso cumplió en nombre de su hijo con lo dispuesto por el Código Civil para el hallazgo de cosa mueble. Por tanto, los actos de la señora Rivera Ayuso benefician a su hijo ya que actuó en nombre de éste y no en su nombre propio. Evidentemente, resolver que ésta actuó en su nombre propio constituiría un "despojo" a su representado de la cosa que éste venía poseyendo, resultado que no podemos endosar. Véase Pantaleón Prieto, *supra*.

En consecuencia, debe ordenarse la consignación en el Municipio de Carolina del dinero encontrado en las dos "pailas de pintura" y proceder con la publicación del hallazgo conforme al Código Civil. De no aparecer el dueño original, el dinero debe ser adjudicado a favor de la Sucesión del señor Rodríguez Rivera. De igual forma, la Sucesión será acreedora del premio dispuesto en el Artículo 556 del Código Civil, *supra*, de aparecer el dueño original.[4]

IV

En vista de todo lo anterior, se expide el auto solicitado y se revoca la Sentencia emitida por el Tribunal

---

recompensa o de adquirir la propiedad de la cosa encontrada.

[4] Para evitar que se le impute al señor Rodríguez Rivera haber incumplido con las obligaciones del hallador y pierda el derecho a la recompensa dispuesta por el Código Civil de aparecer el dueño o su derecho de adquirir la propiedad de la cosa encontrada de no aparecer, éste (representado ahora por su sucesión) o, en su defecto, la señora Rivera Ayuso, como su representante legal, deberá asegurarse que se consigne la totalidad del dinero encontrado reponiendo los quinientos dólares ($500) que el menor tomó de las "pailas de pintura".

de Apelaciones. Se devuelve el caso al Tribunal de Primera Instancia para que ordene la consignación del dinero en el Municipio de Carolina y se proceda conforme al procedimiento dispuesto en el Código Civil para el hallazgo de cosas muebles.

Federico Hernández Denton<br>
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ovidio E. Rodríguez Díaz, Geisha  *
Mary Rodríguez Díaz y Mía     *
Rodríguez Díaz, menores de edad  *
representados por su madre con   *    CC-2007-796
patria potestad, Rose Marie    *
Díaz Ramos                 *
                              *
   Peticionarios            *
                              *
      vs.                *
                              *
Estado Libre Asociado de Puerto  *
Rico, Policía de Puerto Rico,   *    Certiorari
Departamento de Hacienda, Héctor *
Rojas Rivera y/o Sucn. de Héctor *
Rojas Rivera compuesta por     *
Fulano, Sutano y Perensejo, la  *
Sucn. de Don Rufo González     *
Guzmán compuesta por Rufo      *
González Rosario, Harold       *
González Rosario, Paul González *
Rosario y Doña Adalberta Rosario *
Viuda de González           *
                              *
   Recurridos              *
*******************************

SENTENCIA

San Juan, Puerto Rico, a 14 de julio de 2008.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se expide el auto solicitado y se revoca la Sentencia emitida por el Tribunal de Apelaciones. Se devuelve el caso al Tribunal de Primera Instancia para que ordene la consignación del dinero en el Municipio de Carolina y se proceda conforme al procedimiento dispuesto en el Código Civil para el hallazgo de cosas muebles.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López concurre con el resultado sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo